**Donovan Keith WAPPLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–01–00389–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 8, 2005.

Rehearing Overruled Jan. 26, 2006.

Donovan Wappler, Mark R. Yanis, Grant Matthew Scheiner, Houston, TX, for Appellant.

Lori Deangelo Fix, Assistant Dist. Atty., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION ON REMAND FROM THE COURT OF CRIMINAL APPEALS

ELSA ALCALA, Justice.

A jury found appellant, Donovan Keith Wappler, guilty of the misdemeanor offense of driving while intoxicated (DWI). The trial court, in accordance with an agreement between appellant and the State, assessed appellant's punishment at 42 days in jail. On appeal, appellant argued that the trial court erred in imposing a 15-minute time limit on voir dire. We found that, by objecting to the trial judge's proposed dismissal of the panel, appellant waived his right to complain that he did not have an adequate opportunity to conduct voir dire of the panel because any error caused by the voir-dire limitation would have been cured by the dismissal of the jury panel.[1] *See Wappler v. State*, No. 01–01–00389–CR (Tex.App.-Houston [1st Dist.] Jan. 9, 2003), *reh'g denied, opinion withdrawn*, substituted opinion at 104 S.W.3d 661. Appellant subsequently filed a motion for rehearing with this Court. We denied the motion, but withdrew our original opinion and substituted a new opinion. *See Wappler v. State*, 104 S.W.3d 661 (Tex.App.-Houston [1st Dist.] 2003). In our substituted opinion, we held that

appellant was estopped from complaining about the voir-dire time limitation because he affirmatively asked the court to seat a jury from the venire that he claimed he did not have adequate opportunity to question. *Id.* at 665–66.

Appellant subsequently filed a petition for discretionary review with the Court of Criminal Appeals to challenge our holding that he was estopped from complaining about an inadequate opportunity to conduct voir dire after objecting to the trial judge's expressed intent to dismiss the panel.[2] The Court of Criminal Appeals reversed and remanded the case to this Court with instructions to consider the merits of this issue. *See Wappler v. State*, 138 S.W.3d 331 (Tex.Crim.App.2004). Accordingly, on remand, we addressed the merits of appellant's first point of error, that the trial court erred by giving him only 15 minutes to conduct voir dire. Appellant moved for en banc reconsideration of our opinion issued February 24, 2005. We withdraw that opinion and vacate its judgment, issue this opinion in its stead, and deny appellant's motion for en banc reconsideration as moot. We reverse the cause and remand for a new trial.

### Facts

On December 2, 2000, Mary Chang was on her way from work when she stopped at a yield sign. Appellant, who was driving a Ford Taurus, hit her car from the

1. We also found that (1) a venire member was not challengeable for cause simply because he stated that he would "probably" believe policemen and doctors more than other witnesses; (2) appellant's statements to the constable at the scene of the automobile collision were not obtained during custodial interrogation; (3) even if the trial court erred when it failed to suppress appellant's statements, the error was harmless; (4) the trial court's giving of an abstract jury charge not raised by the evidence was not reversible error; (5) appellant's rights under the confrontation

clause were not violated; and (6) the evidence presented at trial was factually sufficient to support appellant's conviction. *See Wappler v. State*, No. 01–01–00389–CR (Tex.App.-Houston [1st Dist.] Jan. 9, 2003), *reh'g denied, opinion withdrawn*, substituted opinion at 104 S.W.3d 661.

2. Appellant did not challenge our other holdings; nor did the Court of Criminal Appeals address our other holdings.

rear. Chang got out of her car and saw that appellant was the only person in the Taurus. As Chang approached appellant to ask him what had happened, she could smell alcohol on his breath.

Chang called 911 from her cell phone and then called her husband. Chang noticed that appellant was "unbalanced" when he got out of his car, and that he had to hold onto his car to walk. Chang testified that appellant was "completely drunk." When Chang asked appellant for his insurance information, he handed her three cards, but he did not say anything. Appellant said that he wanted to go to a gas station to make a telephone call. Chang was afraid that appellant would have an accident if he left, so she handed him her cellular telephone. Appellant was unable to dial, so he handed Chang's telephone back to her, and she dialed the number for him. While they were waiting for EMS, appellant got inside his car. Chang noticed that appellant appeared to be cleaning the inside of his car.

Chang's husband, Steve Fargo, arrived at the scene within 10 to 15 minutes after the accident. Fargo smelled alcohol on appellant's breath and noticed that appellant was disoriented and seemed to be "meandering" around. Fargo called the police from the scene and again told them where the accident was located. Appellant interrupted and insisted that they were on Highway 249, rather than the Sam Houston Parkway at Bammel North Houston.

Harris County Constable Steven Romero arrived at the scene at about 7:50 p.m. He noticed that appellant had alcohol on his breath, that his speech was "kind of slurred," and that he had bloodshot eyes. Fargo told the officer that he had seen appellant wiping his dashboard with a rag

before Romero arrived. Romero found a rag on the ground that smelled like alcohol.

Romero performed a horizontal gaze nystagmus (HGN) test, on which appellant exhibited all six clues.[3] He then asked appellant to perform several field sobriety tests, but appellant refused. Appellant was uncooperative, insisted that he had done nothing wrong, and refused to put his hands on the car. Romero grabbed appellant's sleeve, placed appellant's hands on the car, handcuffed him, and patted him down. Romero testified that appellant's pants were wet and that, after he patted appellant down, Romero's hand smelled like urine. Appellant was placed in the back of the patrol car. Romero gave appellant no statutory warnings at the scene.

At some point during the investigation, Romero asked appellant whether he had been drinking. Appellant stated that he had been drinking at a casino in Louisiana, but that he had taken his last drink two hours earlier. Romero took appellant to the police station, where he was read his statutory rights. Romero offered appellant a breath test, which he refused. Appellant also refused to perform any field-sobriety tests. Appellant's refusals were videotaped; the videotape showed appellant to be belligerent.

### Procedural History

During jury selection at appellant's trial, the jury panel initially consisted of 20 people. The trial judge conducted preliminary voir dire of the venire members. The trial judge introduced herself and had the attorneys stand and introduce themselves. She asked the panel members if anyone knew either herself or the attorneys. She

---

**3.** Evidence of the HGN test was admitted at the pretrial hearing on the motion to suppress, but was not admitted at trial because the State had failed to designate the testifying police officer as an expert witness.

asked the panel if they were qualified voters in Harris County; if anyone had ever been convicted of theft or any felony; if anyone was under indictment or legal accusation for theft or any felony; if anyone had ever been arrested; if anyone had himself or had someone close to him been arrested or charged with DWI; if everyone could read English; and if anyone had anything private to discuss with the Court. The trial judge instructed the venire members that she would speak individually to anyone who had any information on these topics.

At the bench, for about an hour, the trial court and the attorneys each questioned the jurors who had information concerning the topics addressed by the Court. Of the panel of 20 venire members, nine people had information concerning the trial court's voir-dire questions. The trial court and both the State's and the appellant's attorneys each individually questioned venire members 1, 2, 4, 7, 10, 11, 12, 15, and 18. The trial court granted six challenges for cause on venire members 1, 2, 4, 10, 12, and 15 and excused them from the courtroom.

The trial court then asked each of the remaining 14 venire members to stand up individually and state his name and occupation. The remaining jurors then individually stated their names and described their occupations. The trial court explained to the jury that each side would conduct voir dire for 15 minutes. Neither the State nor appellant's attorney voiced any objections to the court's time limit of 15 minutes.

The State's attorney questioned members of the venire panel concerning the elements of the DWI offense, their feelings about police officers, ways jurors could tell whether a driver or person was intoxicated, and the jurors' willingness to convict based on the testimony of one witness.

The trial court granted the State an additional minute and one-half to finish its voir dire when time was called, on the grounds that the court had made a few comments from the bench during the State's voir dire.

Appellant's attorney then conducted his voir dire. He asked how many people were missing work to be in court, whether the jurors believed that people were innocent until proven guilty, whether the jurors wondered what appellant had done, and whether anyone had served on a grand jury; he then explained the concept of "beyond a reasonable doubt." Appellant's attorney also asked the venire members whether they could think of any reason why a sober person might not want to take a breath test and whether any of the venire members had experienced any bad interactions with police officers. Appellant's attorney then discussed reasons people might choose not to testify in their own defense at their trial.

When time was called, appellant's counsel requested additional time for voir dire, stating that he had more issues to cover. The court would not allow him any more time and told him that he could read the questions he wanted to ask the venire members into the record at the break, after the parties had exercised their peremptory strikes. The trial court then granted two challenges for cause, leaving 12 venire members remaining on the panel.

Appellant argued that he should be allowed to make his bill of exceptions before making his strikes and before the jury was impaneled, but the trial judge denied this request. Immediately before the parties began to exercise their peremptory challenges, however, venireperson number 18 asked to approach the bench. The venireperson informed the court that he would be biased against the defendant and for

the State. The State and the defense both moved to strike venireperson 18, and the judge struck him from the panel. After striking this member of the venire, the judge proposed to dismiss the panel—evidently believing there would not be enough venire members left to constitute a jury after the parties exercised their peremptory strikes.

Appellant objected and stated that there was no legal reason for the panel to be excused, because if the defense and the State exercised strikes against the same persons (double-strikes), there would still be enough members to constitute a jury. The judge agreed not to dismiss the panel. The parties both exercised a strike on venire member number six, leaving just enough venire members to obtain a jury. After the jury was seated, appellant renewed his objection to the limitation on voir dire and made a bill of exceptions about the questions he would have asked had he been given additional time. The trial court left the courtroom shortly after defense counsel began to make his bill, but counsel for the State remained in court.

The gist of the questions counsel contended he did not have time to ask included: (1) whether the venire could consider the full range of punishment; (2) whether any venire members were members of Mothers Against Drunk Drivers (MADD); (3) whether any of the venire members had been affected by alcohol and whether those experiences would cause them to favor the State; (4) whether any of the venire members would believe a police officer simply because of his occupation and whether any of the venire members were related to or knew police officers, resulting in a bias for the State; (5) whether the venire members could disregard incriminating, but illegally obtained statements; and (6) whether the venire members would find appellant guilty simply because he had been in an accident.

### Limitation of Voir Dire

 Appellant argues that, because he was not able to explore the questions in his bill of exceptions with the venire, he could not intelligently exercise his peremptory strikes. Jury selection and the laws governing it are designed to ensure that juries in criminal cases are fair to both sides; of paramount concern is the defendant's right to exercise peremptory challenges intelligently. *See Smith v. State,* 703 S.W.2d 641, 643 (Tex.Crim.App.1985). The purpose of voir dire is to (1) elicit information that would establish a basis for a challenge for cause because the venireman is legally disqualified from serving or is biased or prejudiced for or against one of the parties or some aspect of the relevant law; (2) facilitate the intelligent use of peremptory challenges that may be "exercised without a reason stated, without inquiry and without being subject to the court's control"; and (3) indoctrinate the jurors on the party's theory of the case and to establish rapport with the prospective jury members. *See Sanchez v. State,* 165 S.W.3d 707, 710–11 (Tex.Crim.App. 2005). Texas trial courts have broad discretion over the jury-selection process. *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim.App.2002). The trial court's right to dispatch its business expeditiously must be justly balanced against society's interest in seating fair juries. *See McCarter v. State,* 837 S.W.2d 117, 120 (Tex.Crim.App.1992).

 A trial court may impose reasonable restrictions on the exercise of voir-dire examination, including reasonable limits on the amount of time each party can question the jury panel. *Caldwell v. State,* 818 S.W.2d 790, 793 (Tex.Crim.App.1991), *overruled on other grounds by Castillo v. State,* 913 S.W.2d 529 (Tex.Crim.App.

1995); *Ratliff v. State*, 690 S.W.2d 597, 597 (Tex.Crim.App.1985). No bright-line rule identifies what amount of time allowed for voir dire is too short. The amount of time allotted is not, alone, conclusive. *S.D.G. v. State*, 936 S.W.2d 371, 380 (Tex.App.-Houston [14th Dist.] 1996, pet. denied). A reasonable time limitation for one case may not be reasonable for another case; thus, each case must be examined on its own facts. *Ratliff v. State*, 690 S.W.2d 597, 601 (Tex.Crim.App.1985); *Ganther*, 848 S.W.2d at 882.

### Standard of Review

■■■■ The trial court does not err in restricting voir dire unless the court abuses its discretion. *Barajas*, 93 S.W.3d at 38. Absent an abuse of discretion, we will not reverse the trial court's refusal to allow defense counsel additional voir-dire time. *McCarter*, 837 S.W.2d at 119; *Smiley v. State*, 129 S.W.3d 690, 696 (Tex. App.-Houston [1st Dist.] 2004, no pet.). A trial court abuses its discretion when it prohibits defense counsel from asking proper voir-dire questions. *Rhoades*, 934 S.W.2d at 118. When a party complains of an inability to question the venire collectively, the following two-part test applies: (1) whether the complaining party attempted to prolong the voir dire by asking questions that were irrelevant, immaterial, or unnecessarily repetitious and (2) whether the questions the party was not permitted to ask were proper voir-dire questions. *McCarter*, 837 S.W.2d at 119. When a party's voir dire is terminated as he attempts to question venire members individually, we must also consider a third factor—(3) whether the party was prevented from examining a prospective juror who actually served on the jury. *Id.*; *Ratliff*, 690 S.W.2d at 600. Here, appellant's voir dire was terminated while his counsel was asking questions of venire member 19.

Therefore, we apply the three-part test. *See McCarter*, 837 S.W.2d at 120.

### Bill of Exceptions

In his bill of exceptions, appellant's attorney asserted that, had he been permitted additional time to question the venire panel, he would have explored several issues with the panel. On appeal, he complains about most of the issues he raised in his bill of exceptions, contending that:

(1) he was "going to ask whether the jury could consider the full range of punishment in this case including the minimum punishment range. None of the venire panels were examined on that topic.";

(2) he was "not permitted to question the panel on ... whether anyone on the panel was a member of Mothers Against Drunk Drivers (MADD) or how members of the panel's lives had been affected by alcohol, either positively or negatively and whether such experiences might cause panel members to hold a particular bias in favor of the State.";

(3) he "was unable to more adequately discuss feelings about police officers with the jury." He acknowledged that one panel member did mention that she was related to two police officers. However, his complaint concerned an inability due to the time restriction to, "ask all of venire members whether they knew police officers, or whether they could be more likely to believe the testimony of police officers simply because of what those individuals did for a living. Further, [appellant's attorney] would have attempted to ask the venire panel about whether they had a bias in favor of police officers and in favor of the State in this case because of the same.";

(4) he "was also hoping to question the venire panel on the issue of illegally obtained statements, specifically because

it is an issue in this case. And the defense plans on requesting a jury instruction regarding the same.";

(5) he would have asked the venire panel, "whether they could disregard all statements which were taken in violation of defendant's Sixth Amendment rights, his right under Article I, Section 10 of the Texas Constitution as well as Article 38.22 of the Code of Criminal Procedure by virtue of Article 38.23 of the Code of Criminal Procedure. More specifically[,] the issue in this case was whether [appellant] had made incriminating statements to the police officer while [appellant] was under arrest and without the benefit of Miranda warnings";

(6) he would have asked, "whether people have had a problem with alcohol or alcoholism in their families and whether those types of problems would affect venire members service as a juror." Appellant's attorney stated that he would have more thoroughly examined this issue with one of the seated jurors in the case, venire member 18, who had a son who was arrested for DWI in Galveston three years ago;

(7) he "would have liked to have asked that panel whether the fact that [appellant] was involved in a motor vehicle accident might cause the jurors to conclude he's guilty on that basis and with nothing more."

### Propriety of Questions

▮▮▮▮ A "proper" voir-dire question is one that seeks to discover a venire member's views on issues relevant to the case. *Rhoades,* 934 S.W.2d at 119; *McCarter,* 837 S.W.2d at 121–22. An otherwise proper question is impermissible, however, if it attempts to commit the juror to a particular verdict based on particular facts. *Barajas,* 93 S.W.3d at 38. In addition, a voir-dire question that is so vague or broad in nature as to constitute a global fishing expedition is not proper and may be prohibited by the trial court. *Id.* at 39.

▮▮▮▮ Counsel's first intended question, regarding the range of punishment, was an appropriate question on a topic that had not been previously covered. *See Goodspeed v. State,* 120 S.W.3d 408, 413 (Tex.App.-Texarkana 2003, no pet.) (noting that proper voir-dire examination would have ensured that all jurors were qualified to consider entire range of punishment). Counsel's second intended question, concerning membership in MADD and the impact of alcohol on the venire member's lives, was a proper question because it was not overly broad and addressed an issue relevant to the case. His third intended question, regarding bias toward police officers, was also a proper one. His fourth and fifth intended questions, concerning "illegally" obtained statements and *Miranda* warnings, were also proper questions. Counsel's sixth question, however, was simply a variation of his first question regarding the impact of alcohol on the lives of individual venire members. Although appellant contends his trial counsel would have questioned venire member 18 further about this subject, we note that the trial court had granted both parties' challenges for cause to venire member 18, dismissing her from the panel before counsel made his bill of exceptions. Counsel's seventh intended question—whether the venire members would conclude that appellant was guilty simply because he was involved in an automobile accident—was improper because it sought a commitment from the venire members.

Of the intended questions that appellant complains about on appeal, we have concluded that five were proper questions. Appellant, therefore, satisfied the second prong of the *McCarter* test. *See* 837 S.W.2d at 119. Accordingly, we turn to

the question of whether, had counsel adequately managed his time during voir dire, he would have had sufficient time to question the venire members concerning their ability to consider the full range of punishment, membership in MADD, whether they could disregard incriminating, but illegally obtained statements, the impact of alcohol on their lives, and the issue of bias toward police officers.

### Time Management

Counsel's use of time during voir dire was neither a model of efficiency nor an egregious attempt to prolong the voir dire. Although counsel repeated questions on the same topics already discussed by the trial court during its voir dire and the individual voir dire and by the State—such as questions concerning the venire members' feelings about police officers, whether anyone near to the venire members had been arrested for DWI, and the venire members' feelings about alcohol—we cannot conclude that counsel's repetition of the same topics was the result of an attempt to prolong voir dire unduly. Our review of the record shows that counsel discussed a few matters in a somewhat repetitive manner, but the overall tenor and content of his voir dire does not show that the questions posed to the venire members were irrelevant, immaterial, or unnecessarily repetitious. *See id.* at 121 ("[D]efense counsel may not be precluded from the traditional voir-dire examination simply because the questions asked are repetitious of those asked by the court and the prosecutor."). Therefore, appellant satisfied the first prong of the *McCarter* test.

### Truncated Examination of Jurors Who Actually Served on the Jury

The trial court terminated defense counsel's voir-dire examination after 15 minutes, while counsel was questioning venireperson number 19, who actually served on

the jury. *See id.* at 119. Therefore, appellant satisfied the third prong of *McCarter*. We hold that appellant has satisfied the three-part test in *McCarter* and that the trial court abused its discretion by prohibiting defense counsel from asking proper voir-dire questions.

### Additional Error

██ Within his issue on appeal, appellant complains that the trial court erred by refusing to consider his bill of exception concerning the voir-dire questions that he was precluded from asking the venire panel due to the time limits imposed by the trial court. During his presentation of the bill of exceptions, appellant's attorney stated on the record, as follows:

> For the record, Judge Law has stepped out of the room and has not been present during the making of this bill of exception. And although I've given all the case law to Judge Law, I don't believe that this bill of exception is being fairly considered ... The Defense has been harmed ... [a]nd the Defense has not been able to intelligently exercise the peremptory strikes because the Defense has not been permitted to question the venire panel on those topics.

The trial court was not present in the courtroom when appellant's attorney made his bill of exception on the record. The trial court also refused to allow appellant's attorney to present his bill of exception until after the venire panel was excused and a jury was seated. By refusing to consider appellant's attorney's bill of exception through her mere presence in the courtroom and before the attorneys made their peremptory strikes, the trial court deprived herself of the opportunity to evaluate whether appellant's proposed voir-dire questions were proper at a time when the error could have been cured by allowing the questions before the dismissal of the venire. We hold that the trial

court abused its discretion by terminating voir dire and seating the jury without hearing and evaluating the questions defense counsel was not permitted to ask. *See Ganther,* 848 S.W.2d at 882 (*holding* that purpose of voir dire includes eliciting information necessary to intelligent exercise of peremptory strikes); *see also Ratliff,* 690 S.W.2d at 600 (*requiring* that appellate court consider whether party was prevented from examining juror who actually served on panel). We turn, therefore, to whether the error was harmless.

## Harm Analysis

■■■ The Sixth Amendment guarantees the right to a trial before an impartial jury. *Franklin v. State,* 138 S.W.3d 351, 354 (Tex.Crim.App.2004). The right to question venire members to exercise peremptory challenges intelligently is an essential part of that Sixth Amendment guarantee. *Id.; see also Gonzales v. State,* 994 S.W.2d 170, 171 (Tex.Crim.App. 1999) ("[T]he right to pose proper questions during voir-dire examination is included within the right to counsel under Article I, § 10, of the Texas Constitution."). If the trial court abuses its discretion by denying a defendant the right to propound a proper question to prospective jurors, we must conduct a harm analysis. *Gonzales,* 994 S.W.2d at 171; *see also*

*Cena v. State,* 991 S.W.2d 283, 284 (Tex. Crim.App.1999) (*directing* appellate court to conduct harm analysis of trial court's error in refusing to permit defendant to ask jury panel proper question).[4]

■■■ The Court of Criminal Appeals in *Gonzales* did not specify whether the harm analysis required when a defendant is denied his constitutional right to ask a proper voir-dire question is the constitutional harm analysis under Texas Rule of Appellate Procedure 44.2(a)[5] or the nonconstitutional harm analysis under rule 44.2(b).[6] But, the lower court on remand in *Gonzales,* the Court of Criminal Appeals itself in a later case, and this Court have all specified that the harm analysis required is a rule 44.2(a) analysis. *See Franklin,* 138 S.W.3d at 354; *Rios v. State,* 4 S.W.3d 400, 402 (Tex.App.-Houston [1st Dist.] 1999), *pet. dism'd, improvidently granted,* 122 S.W.3d 194 (Tex.Crim.App.2003); *Gonzales v. State,* 2 S.W.3d 600, 604 (Tex. App.-Texarkana 1999, pet. ref'd). In *Franklin,* the Court of Criminal Appeals opined as follows:

Under Texas Rule of Appellate Procedure 44.2, the standard of review for errors of a constitutional dimension differs from the standard for other errors.... We have said before that

---

4. Except for certain federal constitutional errors deemed "structural" by the United States Supreme Court, no error is categorically immune from a harmless error analysis. *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App. 1997). Structural error is "a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante,* 499 U.S. 279, 298, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). In *Gonzales,* the Court of Criminal Appeals expressly declined to hold that erroneously restricting proper questions at jury voir dire was federal-constitutional *structural* error.

5. Rule 44.2(a) provides as follows:

(a) *Constitutional Error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a).

6. Rule 44.2(b) provides as follows:

(b) *Other Errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. Tex.R.App. P. 44.2(b).

"[c]onstitutional provisions bear on the selection of a jury for the trial of a criminal case." And while not every error in the selection of a jury violates the constitutional right of a trial by an impartial jury, we conclude that the error in this case did violate that right.

The Sixth Amendment guarantees the right to a trial before an impartial jury. Part of the constitutional guarantee of the right to an impartial jury includes adequate voir dire to identify unqualified jurors. And we have consistently held that essential to the Sixth Amendment guarantees of the assistance of counsel and trial before an impartial jury "is the right to question venire members in order to intelligently exercise peremptory challenges and challenges for cause."

*Franklin*, 138 S.W.3d at 355 (citations omitted). Therefore, we analyze the harm of the trial court's error in denying appellant the opportunity to ask proper voir-dire questions under rule 44.2(a).[7]

 When the record in a criminal case reveals constitutional error subject to harmless error review, we must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX.R.APP. P. 44.2(a); *Franklin*, 138 S.W.3d at 354. Our task is to calculate, as nearly as possible, the probable impact of the error on the jury in light of the evidence adduced at trial. *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim.App.2002) (citing *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex.Crim.App.2000)). We must, therefore, calculate, as nearly as possible, the probable impact on the jury of the trial court's error in refusing to allow appellant the opportunity to ask

7. The Court of Criminal Appeals has recently issued two opinions that imply, without expressly holding, that it is appropriate to conduct a rule 44.2(b) harm analysis of a trial court's error in precluding a defendant from asking proper questions of a jury panel during voir dire.

In *Rich v. State*, the Court of Criminal Appeals stated that "[a] trial judge's impermissible exclusion of a proper question during jury voir dire is subject to a harmless error analysis" when voir dire is conducted in a group setting, but it did not state whether the analysis should be conducted under rule 44.2(a), governing constitutional error, or under rule 44.2(b), governing non-constitutional error; however, because the court of appeals had concluded that rule 44.2(b) applied, and because the appellant did not contest that conclusion, the Court of Criminal Appeals assumed that rule 44.2(b) applied. *See* 160 S.W.3d 575, 577 (Tex.Crim. App.2005). The dissent pointed out that "prohibiting appellant from asking the venire members a proper question was, under binding precedent, an error of constitutional dimension." *Id.* at 578 (Holcomb, J., dissenting). Subsequently, in *Sanchez v. State*, 165 S.W.3d 707, 713, n. 16 (Tex. Crim.App.2005), the Court of Criminal Ap-

peals noted in a footnote that *Rich* had stated that rule 44.2(b) "is applicable when voir dire is conducted in a group setting and defendant is prohibited from asking a proper question of the panel." By analogy, the court applied a rule 44.2(b) analysis in *Sanchez; Sanchez*, however, addressed a different question, namely the proper analysis to apply when a trial court erroneously permits the State to improperly commit jurors to a set of facts during voir dire. *See id.*

Because both *Gonzales* and *Franklin* characterized the denial of the right to ask proper voir-dire questions as a constitutional right; because the majority opinion in *Rich* assumed, instead of affirmatively holding, that a rule 44.2(b) harm analysis, governing non-constitutional error, applied to such an error; and because *Sanchez* addressed a different form of voir-dire error, we will continue to follow binding Court of Criminal Appeals precedent and our own precedent holding that rule 44.2(a), governing constitutional error, is the correct harm analysis to apply when the trial court precludes a defendant from asking proper questions during voir dire. *See Franklin*, 138 S.W.3d at 354; *Rios*, 4 S.W.3d at 403; *Gonzales*, 2 S.W.3d 600 at 604.

proper voir-dire questions in light of the evidence adduced at trial, to determine whether we can conclude beyond a reasonable doubt that the error did not contribute to his conviction or punishment. *See* TEX.R.APP. P. 44.2(a); *McCarthy*, 65 S.W.3d at 55; *Wesbrook*, 29 S.W.3d at 119.

The Court of Criminal Appeals has determined that, by applying certain, general factors, we may evaluate how a defendant was harmed by a trial court's error in denying a proper voir-dire question during a group setting. *Rich v. State*, 160 S.W.3d 575, 577 (Tex.Crim.App.2005). Although the court applied a 44.2(b) harm analysis rather than a 44.2(a) harm analysis in *Rich*, because the defendant did not assert a 44.2(a) complaint on appeal, *Rich's* general factors apply under either harm analysis when determining whether a defendant has been harmed by error in denying a proper voir-dire question. *See id.* As the court stated in *Rich*,

> In the case of the erroneous admission of evidence, we have said that the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *We believe these same general factors are relevant considerations in determining the harm from being denied a proper question to the venire.*

*Id.* at 577–78 (footnote omitted) (emphasis added).

■ Accordingly, we assess whether appellant was harmed by denial of the proper voir-dire questions during the group, voir-dire setting by reviewing the entire record, including (1) any testimony or physical evidence admitted for the jury's consideration; (2) the nature of the evidence supporting the verdict; and (3) the character of the error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *See id.*

■ Using rule 44.2(a)'s heightened standard and applying *Rich's* general factors, we address the harm resulting from the trial court's error in refusing to permit proper voir-dire questions by appellant concerning (1) how the panel would treat illegally obtained statements and (2) whether the panel could disregard illegally obtained statements. Because we conclude that harmful error resulted from these excluded voir-dire questions, we need not address whether harmful error also resulted from the trial court's exclusion of the other three proper voir-dire questions.

### 1. *Evidence admitted for the jury's consideration*

Romero testified that before appellant's arrest and during the investigatory phase of the traffic stop, he asked appellant questions that resulted in appellant's admitting that he had been drinking since about 11:00 o'clock until he had his last drink, about two hours prior to the accident, and that the accident occurred while he was returning to Houston from the casinos in Louisiana. Appellant's admission that he had been drinking earlier in the day at casinos is pertinent to the central issue in this DWI trial, whether appellant was intoxicated. We therefore conclude that this factor weighs in favor of finding the denial of the proper voir-dire questions harmful.

## 2. *The nature of the evidence supporting the jury's verdict*

The jury faced two competing versions regarding whether appellant was intoxicated. Chang, the driver of the car that appellant struck, testified that he was "completely drunk" and unable to dial a cellular telephone. Chang's husband testified that he smelled alcohol on appellant's breath and that appellant seemed disoriented. Officer Romero likewise testified that appellant had alcohol on his breath, that his speech was slurred, and that his eyes were bloodshot. Romero also mentioned that appellant had apparently urinated on himself.

Contrary to the State's evidence, appellant's girlfriend, Debra McElhany, testified that appellant was not intoxicated and did not slur his speech or have bloodshot eyes. She also described appellant's balance as normal for him and denied that he swayed. McElhany also testified that appellant gave her correct directions to the location where she found the collision near the West Sam Houston Tollway. McElhany denied that appellant's pants were wet and that he smelled of urine. Dr. Joseph Citron, a doctor whom appellant hired to testify at trial, stated that appellant had difficulty walking and balancing himself due to various physical problems that included a missing toe, arthritis, and back problems. Dr. Citron also stated that appellant's diabetes could cause his breath to smell "almost like a cheap wine that's gone bad." In Dr. Citron's opinion, appellant did not appear or sound intoxicated on the videotape recorded at the police station. Additionally, the record shows that appellant refused to submit a breath sample into the intoxilizer, refused to perform all field sobriety tests at the scene of the accident and at the police station, and that the trial court excluded evidence of the results of the HGN test.

Due to the lack of any physical evidence to connect appellant to the offense, the State's case rested entirely on testimonial evidence. Appellant's admission that he had been drinking earlier in the day at casinos was part of the State's evidence indicating that appellant was intoxicated and, more importantly, corroborated testimony by the State's witnesses that described appellant. We therefore conclude that this factor, too, weighs in favor of finding the denial of the proper voir-dire questions harmful.

## 3. *The character of the error when considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error*

At appellant's request, the court's charge to the jury included an instruction that allowed the jury to disregard statements appellant made to the arresting officer at the scene of the traffic stop.[8] The trial court's instruction is as follows:

> The court has admitted into evidence before you the alleged oral statements of the defendant at the accident scene, and you are instructed that before you may consider the same for any purpose you must first believe from the evidence beyond a reasonable doubt that the same was freely and voluntarily made by the defendant without compulsion or persuasion by him, and that prior thereto the defendant had been warned by the person to whom the statement was made that: (1) he had a right to remain silent and not make any statement at all and

---

8. The State objected to the trial court's charge at trial, but, because no complaint about this portion of the charge has been asserted on appeal, we do not address the accuracy or propriety of the instruction.

that any statement he made may be used against him at trial; and (2) any statement he made may be used as evidence against him in court; and (3) he had the right to have a lawyer present to advise him prior to and during any questioning; and (4) if he was unable to employ a lawyer, he had the right to have a lawyer appointed to advise him prior to and during any questioning; and (5) he had the right to terminate the interview at any time; and that the defendant prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived these rights; but if you do not so believe, or if you have a reasonable doubt thereof, then the alleged statement is entirely withdrawn from your consideration, and you shall not give the same any force or effect whatever or consider it as any evidence of the defendant's guilt in this case, and you shall not consider any evidence obtained as a result thereof, if any.

Appellant contends that the trial court's error in denying him the opportunity to question the venire members about their ability to follow this instruction precluded him from determining, in time to exercise his peremptory strikes, whether there were members of the venire who could not follow this instruction and would vote to convict based on statements that they determined to be illegally obtained.

We cannot ascertain whether the jurors actually followed the trial court's instruction that could have resulted in their disregarding evidence of appellant's admission to drinking earlier in the day at casinos because appellant was deprived of the opportunity to question whether the jurors could follow this type of jury instruction. It is possible, though, that a juror was seated who would otherwise have been subject to a challenge for cause because of

an inability to disregard this type of evidence, despite the trial court's instruction not to consider the evidence. *See Barney v. State,* 698 S.W.2d 114, 123 (Tex.Crim. App.1985) (*holding* that juror unable to disregard unlawfully obtained confession would be subject to challenge for cause).

■ Despite our inability to determine whether the empaneled jurors could actually follow the jury instruction, we "generally presume the jury follows the trial court's instructions in the manner presented," unless that presumption is rebutted by evidence showing that the jury did not follow the jury instruction presented. *Colburn v. State,* 966 S.W.2d 511, 520 (Tex. Crim.App.1998) (*presuming* that jury followed trial court's supplemental jury instruction not to consider parole in reaching verdict after jury sent note to trial court asking about possibility of parole for life sentence in capital murder trial, on grounds that defendant neither filed motion for new trial alleging juror misconduct, nor obtained hearing to adduce facts not in trial court's record). Under rule 606(b) of the Rules of Evidence, a juror may not testify "as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict ...," but may testify (1) about "whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve." *See* Tex.R. Evid. 606(b). The Rules of Evidence therefore precluded appellant from introducing evidence regarding whether the jury, during its deliberations, did or did not actually follow the jury instruction given by the trial court. *See id.* Appellant attempted to adduce facts not in the trial court's record during the voir-dire phase of trial by asking the trial

court for permission to conduct a bill of exception before the trial court excused the venire panel, but the court denied his request. Although appellant did not attempt to introduce evidence after the trial concerning how the jurors would have answered the prohibited voir-dire questions, had they been asked, it appears likely that any evidence that would have resulted from that inquiry would have been affected by the jurors' having heard evidence on the subject matter and having deliberated on the admissibility of the statements at issue. We therefore conclude that appellant's failure to present actual evidence that the jury did not follow the jury instruction should not be weighed heavily against him under these circumstances.

We must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error in denying proper voir-dire questions in a group setting did not contribute to the conviction or punishment. TEX.R.APP. P. 44.2(a); *Franklin,* 138 S.W.3d at 354. The only factor that weighs in favor of finding the error harmless here is the presumption that the jury disregarded the evidence pursuant to the trial court's jury-charge instruction that appellant's statements could not be considered in the absence of certain statutory warnings. As previously noted, although we must presume that the jury disregarded appellant's oral statements, we cannot determine whether the jurors actually followed the instruction because appellant was deprived of the opportunity to conduct voir dire concerning the charge actually given at his trial, which called for the jury to assess evidence pertinent to the central, disputed issue of his intoxication.

The remaining factors all point to a conclusion that the trial court's error was harmful. Appellant's admission that he had been drinking earlier in the day at the casinos was nearly the equivalent of a confession to DWI; the admission corroborated the State's witnesses' testimonial evidence that described appellant as intoxicated and was persuasive evidence of appellant's guilt in this sharply contested DWI trial. Under these circumstances, which include the denial of proper voir-dire questions on a topic on which the jurors received a charge requiring them to make an assessment of the evidence that was central to the pertinent issue in the case, and the deprivation of a trial judge who would listen to or evaluate the excluded voir-dire questions during a bill of exceptions, we cannot conclude beyond a reasonable doubt that the denial of the proper voir-dire questions did not contribute to the conviction or punishment. *See* TEX.R.APP. P. 44.2(a); *Franklin,* 138 S.W.3d at 354. Thus, we cannot conclude beyond a reasonable doubt that the trial court's error was harmless.[9]

9. Appellant assigned error to the trial court's denial of his motion to suppress as a point of error on appeal. We concluded in our original opinion that Romero's questions to appellant were not custodial interrogation and that any error in the admission of appellant's inculpatory statements to Romero was harmless because the statements were "cumulative of other evidence of intoxication presented by the State." *Wappler v. State,* 104 S.W.3d 661, 668–69 (Tex.App.-Houston [1st Dist.] 2003), *rev'd on other grounds,* 138 S.W.3d 331 (Tex. Crim.App.2004). Because error in the admission of evidence is analyzed for harm under TEX.R.APP. P. 44.2(b), our conclusion that the statements were harmless under that standard of review does not necessarily resolve the issue in this appeal—whether the denial of voir dire concerning a jury charge that instructed jurors to disregard evidence of appellant's statements did not beyond a reasonable doubt contribute to appellant's conviction or punishment under rule 44.2(a). *See* TEX. R.APP. P. 44.2(b); *Alexander v. State,* 137 S.W.3d 127, 130 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (stating that erroneous admission or exclusion of evidence does not

We sustain the point of error on remand.

### Conclusion

We reverse the judgment of the trial court and remand the cause for a new trial.

Justice KEYES dissenting.

EVELYN V. KEYES, Justice, dissenting.

I respectfully dissent. The majority acknowledges that the trial court's denial of a defendant's right to ask proper voir dire questions deprives the defendant of his Sixth Amendment right to exercise his peremptory strikes intelligently and is thus constitutional error subject to a Rule 44.2(a) analysis under *Gonzales v. State*, 994 S.W.2d 170 (Tex.Crim.App.1999), *Franklin v. State*, 138 S.W.3d 351 (Tex. Crim.App.2004), and *Rios v. State*, 4 S.W.3d 400 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd). Rule 44.2(a) requires us, when conducting a harmless error review of constitutional error, to "reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R.APP. P. 44.2(a). "If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt. The reviewing court should calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex.Crim.App.2002) (citations omitted); *see also Wesbrook v. State*, 29 S.W.3d 103, 119–20 (Tex.Crim.App.2000).

Although the majority correctly recites the Rule 44.2(a) standard of review for harmless constitutional error, it actually constructs its own standard of review of non-constitutional error subject to a Rule 44.2(b) analysis in an apparent attempt to follow *Rich v. State*, 160 S.W.3d 575, 577 (Tex.Crim.App.2005). In *Rich*, the Court of Criminal Appeals stated that "[a] trial judge's impermissible exclusion of a proper question during jury voir dire is subject to a harmless error analysis" when voir dire is conducted in a group setting, but it did not state whether the analysis should be conducted under Rule 44.2(a), governing constitutional error, or under Rule 44.2(b), governing non-constitutional error; however, because the court of appeals had concluded that Rule 44.2(b) applied, and because the appellant did not contest that conclusion, the Court of Criminal Appeals assumed that Rule 44.2(b) applied. *See* 160 S.W.3d at 577.[1] The court observed that in reviewing for non-constitutional error under Rule 44.2(b), the appellate court is required to "assess whether the defendant's substantial rights were affected— that is, whether the error had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* It continued, "In the case of the erroneous admission of evidence, we have said that the appellate court should consider everything in the record, including any ... evidence admitted ... the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the [parties'] theories, closing arguments, voir dire, and whether the State emphasized the er-

result in reversible error unless it affects substantial right of accused).

**1.** The dissent pointed out that "prohibiting appellant from asking the venire members a

proper question was, under binding precedent, an error of constitutional dimension." *Rich*, 160 S.W.3d at 578 (Holcomb, J., dissenting).

ror." *Id.* at 577–78. It concluded, "We believe these same general factors are relevant considerations in determining the harm from being denied a proper question to the venire." *Id.* at 578. The court reversed the case and remanded it to the court of appeals "to conduct a proper harm analysis," without further instructions.

While stating that it is using the Rule 44.2(a) standard of review and is applying the *Rich* factors, the majority in this case actually constructs its own standard of review of harm from denial of the opportunity to put a proper voir dire question to the venire. Unlike *Wesbrook, McCarthy,* and *Rich,* the majority limits its analysis to addressing "the harm resulting from the trial court's error in refusing to permit proper voir-dire questions by appellant concerning (1) how the panel would treat illegally obtained statements and (2) whether the panel could disregard illegally obtained statements," and it assesses that harm by asking how the voir dire error might have impacted the jury's mental state as gleaned by reviewing the *Rich* factors.

While the *Rich* factors are a useful gloss on the thoroughness of the review of the record required both by *Rich* and by authorities analyzing voir dire error under Rule 44.2(a), *Rich* does not purport to overrule *Gonzales, Franklin,* and *Rios.* Therefore, I believe we are compelled to conduct a standard Rule 44.2(a) harm analysis by reviewing the record to determine whether there is a reasonable likelihood that the voir dire error changed the jury's persuasion on the issue in question, namely appellant's guilt, incorporating the *Rich* factors as a guide to our review. The standard of review for constitutional error under Rule 44.2(a) is set out by the Court of Criminal Appeals in *Wesbrook,* 29 S.W.3d at 119–20 and *McCarthy,* 65 S.W.3d at 52.

In *Wesbrook,* the Court of Criminal Appeals stated that "the critical inquiry is whether the error may have contributed to appellant's conviction or punishment." 29 S.W.3d at 119; *see also* Tex.R.App. P. 44.2(a). It then continued:

> If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt. We must be able to conclude from the record that the erroneously admitted evidence was, in fact, harmless as to punishment beyond a reasonable doubt. An appellate court should not focus on the propriety of the outcome of the trial. Instead, the appellate court should calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence. While the most significant concern must be the error and its effects, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. If an appellate court rules that an error is harmless, it is in essence asserting the nature of the error is such that it could not have affected the jury. Stated in an interrogatory context, a reviewing court asks if there was a reasonable possibility that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question.

29 S.W.3d at 119–20 (citations omitted). The court held that because the jury possessed details of both the defendant's crime and his solicitation to murder—evidence sought to be used against him at the punishment stage of his trial—there was no reasonable likelihood that an inadmissible portion of the testimony consisting of incriminating information elicited from him by a jailhouse informant "considered either alone or in context, moved the jury from a

state of nonpersuasion to persuasion regarding the issue of future dangerousness," thereby affecting the defendant's punishment. *Id.* Therefore, it concluded that the error in admitting the illegally obtained inculpatory information was "harmless beyond a reasonable doubt." *Id.* at 120.

Applying the same standard of review to the record in *McCarthy*, the Court of Criminal Appeals concluded that, even though there was ample independent evidence of guilt, it was impossible to say there was no reasonable likelihood that the State's use of the defendant's illegally obtained statement materially affected the jury's deliberations and thus contributed to the jury's verdict of guilty. *See* 65 S.W.3d at 52–56. The State had relied extensively on the defendant's illegally obtained statement during its case-in-chief and closing arguments as direct evidence to prove her guilt, to establish motive, and to help explain the murder weapon, and the statement was powerful enough to establish guilt, paint the defendant as an unrepentant liar, and set out her cruel and greedy motive for killing her elderly neighbor, with a potentially indelible impact on the jury. *Id.* Thus, the court found harmful constitutional error. *Id.* at 56.

Had it followed *Wesbrook* and *McCarthy* and incorporated the *Rich* factors in its review, the majority in this case would have reviewed the record to determine whether "there was a reasonable possibility that the error [in denying appellant the opportunity to question the venire members about their ability to follow an instruction to disregard appellant's inculpatory statements if they believed them illegally obtained], either alone or in context, [of the entire voir dire, evidence, instructions, parties' theories of the case, closing arguments, and emphasis placed on the error], moved the jury from a

state of nonpersuasion to one of persuasion as to the issue in question," namely appellant's guilt. *See Wesbrook,* 29 S.W.3d at 119–20. That is, had the majority employed the correct standard of review of constitutional error under Rule 44.2(a), it would have determined whether the record demonstrated that the impact of the trial court's denial of appellant's proper voir dire question was sufficient to move the jury from a state of nonpersuasion to one of persuasion as to appellant's guilt. It would not have attempted to determine how the jury panel would treat illegally obtained statements or whether the jury panel could disregard such statements.

Instead, the majority first considers the effect on the jury of the trial court's instruction to disregard any inculpatory statement made by appellant unless the jurors "first believe from the evidence beyond a reasonable doubt that the same was freely and voluntarily made by the defendant without compulsion or persuasion by him" and that he was first given his article 38.22 warnings. *See* Tex.Code Crim. Proc. Ann. art. 38.22 (Vernon 2005). It is well established that a jury is presumed to follow such an instruction and that error may not be found on the basis that it did not unless that presumption is rebutted by evidence. *See Colburn v. State,* 966 S.W.2d 511, 520 (Tex.Crim.App.1998). The majority acknowledges that this presumption "weighs in favor of finding the error harmless," but it also states that it "cannot determine whether the jurors actually followed the instruction because appellant was deprived of the opportunity to conduct voir dire concerning the charge actually given at his trial, which called for the jury to assess evidence pertinent to the central, disputed issue of his intoxication." Thus, although the majority states that the presumption that the jury followed instructions weighs in favor of finding the voir

dire error harmless, it effectively nullifies the presumption by deciding that it "cannot determine whether the jurors *actually* followed the instruction." (Emphasis added.)

The only fair inference from the majority's statement is that while an instruction to disregard cures error in the improper admission of *genuinely* illegally obtained evidence presented to *the jury itself* in the absence of evidence that a juror failed to disregard the illegally obtained evidence, it does *not* cure error in the denial of the opportunity to question the entire venire about whether a *veniremember* who *might or might not* have sat on the jury would be able to follow an instruction to disregard evidence that *might or might not* turn out to have been illegally obtained, even if there is no evidence that such a person sat on the jury or that such evidence affected the verdict, because the reviewing court cannot *actually* know what the jury thought.

Without the presumption, the instruction to disregard is necessarily of negligible weight under the majority's standard of review of voir dire error as an inquiry into "how the panel would treat illegally obtained statements and ... whether the panel could disregard illegally obtained statements." These are generally unknowable subjective factors in the absence of a presumption that the jury disregarded evidence it thought illegally obtained and in the absence of any evidence in the record that any juror was actually persuaded to find appellant guilty on the basis of illegally obtained evidence, of which there was none. With both checks on the reviewing court's subjective assessment of what the panel might have thought nullified, it is not surprising that the majority found it could not determine the effect of the voir dire error on the jury that was actually seated. In short, the majority assesses the impact of the error on the jury's mental state and finds it unknowable, rather than looking to the record to determine the impact of the denial of the question on the jury's determination of guilt.

Had the majority reviewed the record to determine whether appellant's inability to question the venire regarding their ability to disregard illegally obtained evidence might have "moved the jury from a state of nonpersuasion to one of persuasion" as to appellant's guilt, as *Wesbrook* requires, it would have had to conclude that there was no evidence that the error moved the jury to find appellant guilty rather than not guilty. Not only was the jury presumed to follow the trial court's instruction to disregard such evidence, and not only was there no evidence that they disregarded the instruction, but also, as we held in a portion of our original opinion, appellant's inculpatory statements were not illegally obtained, and, even if they had been, they were merely cumulative of other evidence which was sufficient to establish appellant's guilt beyond a reasonable doubt. *Wappler,* 104 S.W.3d at 668–69.[2]

*Wesbrook* states, "While the most significant concern must be the error and its

---

**2.** Appellant moved to suppress his statement, in response to the police officer's question at the scene, that he had been drinking at a casino in Louisiana but that he had taken his last drink two hours earlier. Appellant assigned error to the trial court's denial of his motion to suppress as a point of error on appeal. We concluded in our original opinion that Romero's questions to appellant were not made during custodial interrogation; moreover, even if appellant's inculpatory statements to Romero were improperly admitted, the error was harmless, given the other evidence admitted on the issue of intoxication. *See Wappler v. State,* 104 S.W.3d 661, 668–69 (Tex.App.-Houston [1st Dist.] 2003), *rev'd on other grounds,* 138 S.W.3d 331 (Tex. Crim.App.2004).

effects, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error." 29 S.W.3d at 119. In our original opinion, we determined that the admission of appellant's inculpatory statements would have been harmless error even if they had been illegally obtained, and we summarized the evidence of appellant's guilt apart from those statements:

> Chang, Faro, and Romero all testified that appellant appeared intoxicated. There was evidence that appellant was unsteady on his feet, that his eyes were bloodshot, and that his speech was slurred. Chang testified that he could not dial the cell phone. Appellant was seen using a rag to clean the inside of his car, and the rag smelled of alcohol. Finally, there was evidence that appellant had lost control of his physical faculties by urinating in his pants and that he was belligerent. Therefore, the inculpatory statements by appellant were cumulative of other evidence of intoxication presented by the State.

*Wappler,* 104 S.W.3d at 668–69. We found that the evidence was sufficient to support a guilty verdict beyond a reasonable doubt, even if appellant's inculpatory statements had been illegally obtained, which they were not. The Court of Criminal Appeals reversed our holding that appellant was estopped to complain of voir dire error and remanded the case for proceedings consistent with its opinion. *See Wappler,* 138 S.W.3d at 334. The court did not cite to any error in our conclusions that appellant's inculpatory statements were legally obtained and that they were cumulative of other evidence factually sufficient by itself to support appellant's conviction for DWI. *See* 104 S.W.3d at 668–69, 670.

Nevertheless, ignoring and effectively overruling our prior holding, the majority now reweighs the evidence and determines that "[t]he remaining [*Rich*] factors all point to a conclusion that the trial court's error was harmful." Specifically, "[a]ppellant's admission that he had been drinking earlier in the day at the casinos was nearly the equivalent of a confession to DWI." It thus necessarily finds there is a reasonable likelihood that the trial court's denial of the opportunity to ask a proper voir dire question was sufficient to have moved the jury from a state of nonpersuasion to one of persuasion as to appellant's guilt, even though we had previously held that appellant's inculpatory statements were admissible and that the other evidence of his guilt was sufficient to convict him of DWI beyond a reasonable doubt. *Cf. Wesbrook,* 29 S.W.3d at 119–20 ("[B]ecause the jury possessed details of both the crime itself and the solicitation to murder, there is no reasonable likelihood that the inadmissible portion of Jones' testimony, considered either alone or in context, moved the jury from a state of nonpersuasion to persuasion regarding the issue of future dangerousness. The error that occurred was harmless beyond a reasonable doubt.").

Like the Court of Criminal Appeals in *Wesbrook,* I would conclude that because the jury is presumed to have followed the instruction to disregard evidence it thought illegally obtained, because it possessed overwhelming evidence supporting appellant's conviction for DWI, and because appellant's inculpatory statements, even had they been illegally obtained, which they were not, were merely cumulative of other evidence that appellant had been drinking heavily prior to being stopped, there is no reasonable likelihood that the denial of the opportunity to ask the proper voir dire question at issue moved the jury from a state of nonpersuasion to one of persuasion with regard to appellant's guilt.

Because I would hold that the trial court's error was harmless beyond a reasonable doubt under Rule 44.2(a)'s strict standard for review of harmless constitutional error, I would necessarily hold that the error was harmless under 44.2(b)'s less stringent standard for determining whether appellant's "substantial rights were affected—that is, whether the error had a substantial and injurious effect or influence in determining the jury's verdict." *Rich,* 160 S.W.3d at 577.

I would affirm the judgment of the trial court.