# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00597-CR

**Albert James Smith, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. D-1-DC-11-904048, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Albert James Smith guilty of attempted sexual assault and assault causing bodily injury. *See* Tex. Penal Code §§ 15.01, 22.01, 22.011. After finding that Smith had two previous felony convictions, the trial court sentenced Smith to twenty years' imprisonment for attempted sexual assault and one year's imprisonment for assault, with sentences to run concurrently. *See id.* § 12.42(d). In three issues on appeal, Smith asserts that the trial court erred in (1) refusing to grant a mistrial after the complaining witness alluded to Smith's extraneous offenses, (2) denying Smith's request for additional time to voir dire a potential juror, and (3) admitting evidence of Smith's apology to the complaining witness. We affirm the judgments of the trial court.

## BACKGROUND

K.S., the complaining witness in this case, alleged that Smith assaulted her in his home in May of 2010.[1] According to K.S., she and Smith had been friends for several years, and on the night of the assault Smith invited her to his home so that they could watch her "video from the fishing tournament." K.S. explained that she was a videographer and she had recently finished editing a video of a fishing tournament, which she believed Smith wanted to watch because he was interested in fishing. K.S. accepted the invitation and proceeded to Smith's home with the video.

When K.S. and Smith began watching the video, K.S. was sitting on a couch while Smith was sitting in a nearby chair. K.S. noticed that Smith was staring at her, which she testified "felt weird." According to K.S., Smith then came over to the couch where she was seated. It was at this point that the assault began.

K.S. testified that Smith grabbed her by the wrist, forced her to lie down, and pulled off her pants and underwear. K.S. tried to get Smith to stop by yelling, promising she would not report the assault to police if he would let her go, and threatening to tell the police if he continued. She would later recall that Smith just laughed and said "I'm going to get what you deserve [sic]." After Smith took off his shirt and pulled down his pants, K.S. scratched at his chest, neck, and genitals with her hands in an attempt to injure Smith so that he could not complete the assault.

According to K.S., this assault continued for what "felt like, at the time, was a couple of hours," during which K.S. continuously resisted Smith's attempt at forced sexual intercourse. K.S. testified that Smith at one point placed his hands around her neck and squeezed so tightly that

---

[1] We refer to the complaining witness by her initials in order to protect her identity.

he "cut off" her breathing. K.S. would later testify that she felt Smith's sexual organ touch her sexual organ. She recalled that his sexual organ penetrated her sexual organ "a little bit" several times, but that she managed to prevent him from fully penetrating her sexual organ.

Eventually Smith "jumped off" K.S., said "I'm not even hard anymore," and went into another room. K.S. grabbed her pants and purse and ran out the front door. She ran to the nearby home of her acquaintance, Walter Grossman. K.S. asked Grossman to call the police, which he did. Paramedics and police officers were dispatched to Grossman's home. K.S. was subsequently given a sexual assault forensic exam, during which she was examined for signs of sexual assault, and DNA swabs were taken from her breast, fingernails, and genital area. Investigators with the Austin Police Department brought Smith in for questioning that same day and took DNA swabs of his chest and genital areas. They also photographed injuries on Smith's genital area, neck, and chest.

Smith was indicted for sexual assault, three counts of aggravated kidnapping, kidnapping, unlawful restraint, and two counts of aggravated assault. *See id.* §§ 20.02–.04, 22.011, 22.02. Following a jury trial, the jury was not instructed on the aggravated kidnapping and kidnapping counts. The jury charge included instructions on sexual assault as well as the lesser-included offense of attempted sexual assault, unlawful restraint, and the two counts of aggravated assault as well as the lesser-included offense of assault causing bodily injury. *See id.* §§ 15.01 (explaining punishment for attempted offense), 20.02 (defining unlawful restraint), 22.01 (defining assault causing bodily injury), 22.011 (defining sexual assault), 22.02 (defining aggravated assault). The jury found Smith guilty of attempted sexual assault and assault causing bodily injury, but not guilty of the remaining charges. The trial court assessed punishment as outlined above. This appeal followed.

3

## DISCUSSION

Smith raises four issues on appeal, which we group into the following three complaints.[2] First, Smith asserts that the trial court erred in denying his motion for mistrial after K.S. alluded to Smith's extraneous offenses during her testimony. Second, he argues that the trial court erred in failing to allow additional time to voir dire a veniremember who indicated that he may have been previously exposed to facts about the case. Third, Smith complains that the trial court erred in admitting evidence concerning Smith's apology to K.S. after the assault because the apology was irrelevant and unfairly prejudicial. We will address each of Smith's appellate issues separately.

### Reference to extraneous offense

In his first issue on appeal, Smith argues that the trial court erred in denying his motion for mistrial. Specifically, Smith claims K.S.'s testimony that Smith had been "accused of [sexual assault] and more" was an impermissible reference to an extraneous offense that warranted a mistrial. On appeal, the State concedes that K.S.'s statement was a reference to an extraneous offense, but asserts that the trial court's instruction for the jury to disregard the statement was sufficient to cure any harm.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). We will uphold the trial court's

---

[2] In his brief, Smith also complains that the reporter's record was incomplete because it did not include a videotape of his statements to police officers during his initial detention. We abated this appeal and instructed the trial court to incorporate the videotape into the reporter's record. The videotape is now before us, and Smith's complaint about its omission from the appellate record is rendered moot. *See Rocha v. State*, 16 S.W.3d 1, 10 (Tex. Crim. App. 2000) (holding that complaint of failing to file written findings was rendered moot after case was abated and findings were filed).

4

ruling if it is within the zone of reasonable disagreement. *Id.* A mistrial is appropriate for "a narrow class of highly prejudicial and incurable errors" and is used to terminate a trial proceeding when the error is so prejudicial that "expenditure of further time and expense would be wasteful and futile." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

In this case, K.S.'s relevant testimony occurred during her discussion of her attempts to injure Smith in order to prevent his assault. The following exchange took place between K.S. and the prosecutor for the State:

State: Okay. And can you describe for us how you were . . .

K.S.: Oh. And then at the very—and at the very end I—when I was—when I hurt him, I think, I was just telling him—I was just screaming at the top of my lungs, you know, get the [expletive] off me, get the [expletive] off me, get the—just over and over again. And then I just tried to do whatever I could to hurt him and get him off of me.

State: Okay.

K.S.: Because I didn't know if I was going to make it out of there. I didn't know what he was going to do next. He's—you know, he has—I mean, he was accused of this and more.

Smith's trial counsel immediately objected to K.S.'s comment and requested an inquiry outside the presence of the jury as to whether K.S. had intentionally ignored the State's previous instruction not to comment on Smith's extraneous offenses. The trial court excused the jury and allowed Smith's counsel to ask K.S. questions about her statement. K.S. admitted that the prosecutor instructed her not to refer to Smith's prior arrests or accusations made against him. However, when Smith's counsel asked K.S. "and you talked about [the accusations] anyway on

5

purpose. Right?" K.S. answered "[n]o" and stated she "didn't mean to." Smith's counsel moved for a mistrial, which the trial court denied. The jury was brought back into the courtroom, at which time the trial court immediately instructed the jury to disregard K.S.'s last statement.

As a general rule, testimony erroneously referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). An instruction will be insufficient only if the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest the impossibility of removing the harmful impression from the jurors' minds. *Id.*

Based on the record in this case, the trial court could have reasonably concluded that its instruction to disregard K.S.'s statement was sufficient to render the statement harmless. K.S.'s statement was brief; occurred at the end of an extended, non-responsive narrative about the assault; and made reference only to vague, unspecified "accusations" that Smith had committed a crime or crimes beyond this sexual assault. K.S. never mentioned that Smith had been arrested for or convicted of a specific extraneous offense. Without more, the trial court could have reasonably concluded that this testimony neither inflamed the minds of the jury nor created the impossibility of removing the harmful impression from the jurors' minds. Therefore, we cannot conclude that the trial court abused its discretion in denying Smith's motion for mistrial in light of its limiting instruction to the jury. We overrule Smith's first appellate issue.

**Additional time to voir dire prospective juror**

In his second issue on appeal, Smith complains that the trial court erred in denying his request to conduct additional voir dire of a prospective juror. Specifically, Smith asserts that his

6

trial counsel should have been given the opportunity to question Michael Wiest about his potential bias arising from his employment with local law enforcement. Although Smith concedes that his trial counsel's request for additional time to conduct voir dire was delayed, Smith claims that it was necessary to determine whether Wiest should be struck for cause, and thus the trial court erred in denying the request.

During jury selection, Smith's trial counsel had the following exchange with Wiest:

Wiest:      Well, personally, I'm a law enforcement employee. I'm not a peace officer. I've read a lot of different offense reports. And I'm not sure if I have read this case or not.

Counsel:    But you might?

Wiest:      Yeah.

. . . .

Counsel:    Would you be worried or would you say to [a hypothetical defendant], yeah, you probably don't want a person like [you] on [the defendant's] jury?

Wiest:      I think I can be fair and impartial. But I may be privied [sic] to information that a juror shouldn't be.

Counsel:    Very good. And that—I appreciate you bringing that up. Absolutely. And we'll obviously take that to the attention of the judge. And the problem is, as you well know, I couldn't give you enough facts right now to where you'll be able to make that determination, about whether you had any prior contact with this case.

Smith's counsel neglected to question Wiest further and eventually used one of the defense's peremptory strikes to remove Wiest from the jury panel. After both parties exhausted

7

their peremptory strikes and challenges for cause, the trial court took a brief recess to determine the jury list. When the court returned from recess, Smith's trial counsel moved to strike Wiest for cause or, alternatively, "to conduct a further inquiry" to determine if Wiest could remain fair and impartial. The trial court denied both motions, stating that Wiest did not say anything that would disqualify him as a juror and that defense counsel already had the opportunity to question the potential jurors individually.[3]

"The conduct of voir dire rests largely within the sound discretion of the trial court." *Cantu v. State*, 842 S.W.2d 667, 687 (Tex. Crim. App. 1992). Ordinarily, the trial court should give the defendant great latitude in questioning the jury panel. *See Guerra v. State*, 771 S.W.2d 453, 467 (Tex. Crim. App. 1988). "However the trial court has the authority to impose reasonable restrictions on the exercise of voir dire examination for various reasons, among them to curb the prolixity of what can become the lengthiest part of a criminal proceeding." *Id.*; *see also Tamez v. State*, 27 S.W.3d 668, 673 (Tex. App.—Waco 2000, pet. ref'd) (discussing cases where time allotted for voir dire was determined to be unreasonable).

There is no bright-line rule for what amount of time is too short for conducting voir dire, and the time allotted is not alone conclusive. *See Wappler v. State*, 183 S.W.3d 765, 773 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). When an appellant complains about his inability to question the jury panel collectively, an appellate court must determine (1) whether the

---

[3] Smith's trial counsel claimed that had Wiest been struck for cause, defense counsel would have used his peremptory strike to dismiss another juror who ultimately was empaneled. Smith's counsel proposed that if the court did not allow him to conduct additional voir dire of Wiest, the court could give each party one additional peremptory strike, which the trial court rejected.

complaining party attempted to prolong the voir dire by asking questions that were irrelevant, immaterial, or unnecessarily repetitious and (2) whether the questions the party was not permitted to ask were proper voir-dire questions. *Id.*; *see also Dhilon v. State*, 138 S.W.3d 583, 588 n.5 (Tex. App.—Houston [14th Dist.] 2004, no pet.). However, when, as here, the appellant complains that he was prevented from examining a specific veniremember, we also consider whether the veniremember actually served on the jury. *Wappler*, 183 S.W.3d at 773 (citing *McCarter v. State*, 837 S.W.2d 117, 119 (Tex. Crim. App. 1992); *Ratliff v. State*, 690 S.W.2d 597, 600 (Tex. Crim. App. 1985)).

"Jurors do not have to be totally ignorant of the facts and issues of a particular case" in order for a defendant to receive a fair trial by an impartial jury. *Russell v. State*, 146 S.W.3d 705, 710–11 (Tex. App.—Texarkana 2004, pet. ref'd) (noting that veniremembers' knowledge of highly publicized case does not automatically require change of venue). Similarly, a potential juror is not disqualified merely because he works in law enforcement. *See Zakkizadeh v. State*, 920 S.W.2d 337, 338–340 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (concluding police officer not disqualified from sitting on jury). The ultimate issue is whether "there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence the juror in finding a verdict." *See* Tex. Code Crim. Proc. art. 35.16(a)(10); *Russell*, 146 S.W.3d at 714–15 (noting that of forty-four veniremembers who were exposed to media coverage about offense, only eight had formed opinion about case); *Zakkizadeh*, 920 S.W.2d at 340 (noting police officer stated he had not formed opinion about guilt or innocence and would not automatically credit testimony of other officers). We give great deference to the trial court's determination of whether a veniremember can set aside any bias and remain impartial. *See Swearingen v. State*, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003).

In this case, Wiest stated unequivocally that, regardless of his job in law enforcement or his potential exposure to facts about the case, he believed he could remain fair and impartial. The trial court could have credited Wiest's statement and thus determined that Wiest was qualified to sit on the jury. *See id.* Therefore, the trial court could have reasonably concluded that any additional voir dire by Smith's trial counsel would be unnecessarily repetitive, and thus did not warrant extending time for voir dire. *See Wappler*, 183 S.W.3d at 773.

Similarly, the trial court could have concluded that extending voir dire was not necessary because Wiest had already been struck by the defense from the jury panel. By the time Smith's trial counsel requested to conduct additional voir dire of Wiest, jury selection had already lasted nearly five hours, of which ninety minutes was used for the defense's voir dire. Although Smith's trial counsel may have had a strategically valid desire to question Wiest further and possibly then challenge him for cause, the trial court could have reasonably concluded that conducting additional voir dire of a veniremember who had already been struck did not warrant extending voir dire any further. *See id.* (noting that appellate court should consider whether specific veniremember that accused wished to voir dire was ultimately on jury).

Based on this record, we cannot conclude that the trial court abused its discretion in denying Smith's request to conduct additional voir dire of Wiest. We overrule Smith's second appellate issue.

**Admissibility of Smith's apology to victim**

In his third and fourth issues on appeal, Smith asserts that the trial court erred in admitting evidence concerning Smith's alleged apology to K.S. after the assault. Specifically, Smith

10

contends that a handwritten note that read "Sorry"—left by Smith on K.S.'s vehicle weeks after the assault—was irrelevant to any fact of consequence or, alternatively, its probative value was substantially outweighed by its prejudicial effect. *See* Tex. R. Evid. 401–03. We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

Evidence is relevant if it has any tendency to make the existence of any fact of consequence more likely than it would be without the evidence. Tex. R. Evid. 401. "It is important, when determining whether evidence is relevant, that appellate courts examine the purpose for which the evidence is being introduced." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). Relevant evidence is generally admissible unless its probative value is substantially outweighed by some other concern, such as the danger of unfair prejudice. *See* Tex. R. Evid. 402, 403; *see also Gigliobianco v. State*, 210 S.W.3d 637, 640-41 (Tex. Crim. App. 2006). Rule 403 creates the presumption of admissibility, excluding relevant evidence only when there is a clear disparity between its probative value and harmful effects. Tex. R. Evid. 403; *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

In this case, Smith's apology to K.S. was offered as evidence of Smith's consciousness of guilt. "A consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt." *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no writ) (internal quotations omitted). Thus, conduct by the accused after the commission of an offense that indicates a consciousness of guilt is generally admissible as it tends to prove the accused committed the offense alleged. *Id.*; *see also Yost v. State*, 222 S.W.3d 865, 877 (Tex. App.—Houston [14th Dist.]

2007, pet. ref'd).  For this reason, evidence of an accused's apology to an alleged victim, even if vague, is admissible as it indicates a consciousness of guilt.  *See Yost*, 222 S.W.3d at 877 (concluding that letter from accused to victim saying "I am sorry for everything" was significant circumstance indicating guilt).

Thus, Smith's apology is relevant to a fact of consequence in this case; namely, his consciousness of guilt for the offense alleged.  Smith asserts, without citation to authority, that "[w]ithout additional context" the note has no logical connection to the alleged assault.  This complaint is without merit as an apology by the accused, even if vague, is probative of consciousness of guilt.  *See id.*  Similarly, Smith's assertion that "[t]he danger of placing undue emphasis on the meaning of the note far outstripped the note's questionable significance" is without merit.  As we have explained, consciousness of guilt is one of the strongest indicia of guilt.  *See Torres*, 794 S.W.2d at 598.  Therefore, the trial court could have reasonably concluded that evidence of Smith's apology was highly probative, and thus not outweighed by any danger of unfair prejudice.  *See id.* at 600 (noting that unfair prejudice means a "tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one") (internal quotations omitted).

Based on this record, we cannot conclude that the trial court abused its discretion in admitting evidence of Smith's apology to K.S.  We overrule Smith's third and fourth appellate issues.

## CONCLUSION

Having overruled all of Smith's issues on appeal, we affirm the judgments of the trial court.

12

_____

                           Scott K. Field, Justice

Before Justices Puryear, Pemberton and Field

Affirmed

Filed:   September 17, 2013

Do Not Publish