**Donald ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–99–110–CR.

Court of Appeals of Texas, Waco.

April 11, 2001.

Debbie S. Holmes, State Counsel for Offenders, Huntsville, for appellant.

Alfred Eugene Hernandez, Special Prison Prosecution Unit, Huntsville, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

GRAY, Justice.

While in prison, Donald Rogers was charged with striking a correctional officer in the face with his fist. A prison disciplinary hearing was held, and Rogers was found guilty of violating prison rules and regulations. He was assessed 15 days in solitary confinement, permanent loss of 283 days of good conduct time, and loss of other privileges. After the disciplinary proceeding, Rogers was indicted and prosecuted in Madison County, Texas, for as-

sault of a public servant. A jury convicted Rogers and sentenced him to two years in prison. In three points of error, Rogers complains that his conviction violates the double jeopardy provisions of both the U.S. Constitution and the Texas Constitution and that limitation of defense's voir dire denied him effective assistance of counsel. We affirm the decision of the trial court.

## DOUBLE JEOPARDY

In issues one and two, Rogers contends that because he was disciplined while in prison, the criminal prosecution in district court was barred by the double jeopardy clauses of the United States Constitution and the Texas Constitution. We disagree.

Both the federal and state constitutions contain double jeopardy clauses, which protect against a second prosecution for the same offense and multiple punishments for the same offense. The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Similarly, the Texas Constitution provides that "[n]o person, for the same offense, shall be twice put in jeopardy of life or liberty ..." TEX. CONST. art. I, § XIV. In the past, both federal and state courts have consistently held that prison disciplinary punishment does not invoke the protection of either constitution. *See United States v. Williamson,* 469 F.2d 88, 89 (5th Cir.1972); *McKinney v. State,* 491 S.W.2d 404, 407–08 (Tex.Crim.App.1973); *Whitten v. State,* 711 S.W.2d 661, 664 (Tex. App.—Tyler 1985, no pet.); *Smith v. State,* 827 S.W.2d 71, 72 (Tex.App.—Houston [1st Dist.] 1992, no pet.). This court has long held that double jeopardy does not apply to such discipline as solitary confinement of prisoners and loss of good time credit. *Feltrin v. State,* 627 S.W.2d 813, 814 (Tex.

App.—Waco 1982, no pet.). In *Guerrero*, we held that neither the federal nor the state constitutional prohibition against double jeopardy precludes a state from trying an inmate when he has already been "punished" for the same conduct in prison administrative proceedings. *Guerrero v. State*, 893 S.W.2d 260, 261 (Tex.App.—Waco 1995, no pet.).

Rogers suggests that the *Hudson* decision should change our view of prison disciplinary sanctions. *See Hudson v. U.S.*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). The *Hudson* court affirmed that monetary penalties and occupational debarment sanctions imposed by the Office of the Comptroller of Currency did not bar a subsequent criminal trial for the same conduct because those administrative sanctions were not criminal penalties. Stressing that double jeopardy protects only against multiple criminal punishments for the same offense, the court listed several factors for determining if an apparent civil sanction is actually a criminal penalty in nature, including whether: (1) the sanction involves an affirmative disability or restraint; (2) it has historically been regarded as a punishment; (3) it comes into play only on a finding of scienter; (4) its operation will promote the traditional aims of punishment—retribution and deterrence; (5) the behavior to which it applies is already a crime; (6) an alternative purpose to which it may rationally be connected is assignable for it; and (7) it appears excessive in relation to the alternative purpose assigned. *Id.* at 99–100, 118 S.Ct. 488. Rogers suggests that we apply this test to his case to determine that his prison sanctions were in reality criminal penalties that triggered double jeopardy protections. Few courts have addressed the *Hudson* case in the context of prison discipline. No Fifth Circuit or Texas court has actually applied this test to grant protection under either double jeopardy clause.

There are, however, two relevant cases from courts in Texas.

In *Turner v. Johnson*, the court found that prison disciplinary proceedings were not criminal prosecutions that would raise double jeopardy issues. *See Turner v. Johnson*, 46 F.Supp.2d 655 (S.D.Tex.1999). In this case, a prisoner was repeatedly disciplined for continuing to distribute documents calling for a work stoppage. Each incident resulted in loss of good conduct time. The court rejected the prisoner's claim that he had received multiple punishments for the same offense in violation of the double jeopardy provisions. In its analysis of the issue, the court quoted *Hudson*: "[Double Jeopardy] Clause protects only against the imposition of multiple criminal punishments for the same offense." *Id.* at 666. Without discussing or applying the *Hudson* test, the court then stated:

It is well settled that prison disciplinary proceedings do not constitute criminal prosecutions. Hence, they do not implicate the Double Jeopardy Clause, as its applicability is limited to proceedings that are "essentially criminal" in nature. Prison disciplinary proceedings and criminal prosecutions have differing goals. "The prison disciplinary process determines whether the defendant had violated the conditions of his incarceration and is designed to maintain institutional security and order." In contrast, "[a] criminal prosecution is designed to punish the defendant for a violation of the criminal laws." While prison disciplinary sanctions may have punitive aspects, they are primarily remedial in nature. "Punitive interests and remedial interests . . . are nowhere so tightly intertwined as in the prison setting, where the government's remedial interest is to maintain order and to prevent

violent altercations among a population of criminals." (citations omitted).

*Id.*

The court went on to add that prison discipline does not constitute punishment for double jeopardy purposes even when the discipline delays release from prison by depriving a prisoner of good time credits. *Id.* at 667. Thus, the court did not depart from the pre-*Hudson* view that prison discipline is not punishment for double jeopardy purposes.

The *Glinski* court did not apply the *Hudson* rule. *See Glinski v. State*, 986 S.W.2d 79 (Tex.App.—Houston [1st Dist.] 1999, no pet. h.). Glinski was serving a life sentence when he escaped. After his apprehension, he was assessed demotion in classification, loss of commissary privileges and loss of his good time (almost 26 years) at a prison disciplinary hearing. He was later convicted by the Walker County District Court for the offense of escape and sentenced to 18 years in prison. Glinski appealed, complaining that his conviction was barred by double jeopardy. The Houston court acknowledged the *Hudson* decision by quoting: "A person is protected by the double jeopardy clause of the Fifth amendment from multiple prosecutions and multiple punishments for the same offense." *Id.* at 80. However, in its analysis of the issue of double jeopardy, the court turned to the *Hernandez* decision for guidance. *See Ex parte Hernandez*, 953 S.W.2d 275, 280 (Tex.Crim.App. 1997). To determine whether a conviction following a prison disciplinary sanction would trigger the double jeopardy clause, the *Hernandez* court considered whether disciplinary detention was "so grossly unrelated to . . . remedial goals [of maintaining order and discipline in the prison] as to constitute 'punishment.' " *Id.* at 285. The court concluded that a 15–day lock down, in which the defendant was locked up for

23 hours a day (and shackled for the remaining hour) and was denied access to newspapers, telephones, visits, and special programs offered by the detention center, did not constitute punishment under the Fifth Amendment. Using this same reasoning, the *Glinski* court held that the prisoner's loss of good time credit did not trigger the protection of double jeopardy under either the United States or the Texas Constitution. *Glinski*, 986 S.W.2d at 81.

 Regardless of *Hudson*, these courts have continued to hold that prison disciplinary sanctions do not trigger double jeopardy protections. Like the *Turner* and *Glinski* courts, we find that the *Hudson* test is not appropriate for prison disciplinary sanctions. It is well-established that sanctions assessed by a prison do not preclude the state from prosecuting a prisoner for the same conduct. We therefore find that Rogers's conviction does not violate the double jeopardy provisions of either the federal or state constitution. Accordingly, we overrule his first and second issues.

## VOIR DIRE

In his third issue, Rogers contends that he was denied effective assistance of counsel during jury selection because the court limited the duration of his counsel's voir dire examination. The State's voir dire lasted about 35 minutes. After Rogers's counsel had questioned members of the venire for about an hour, the trial court gave her a 5–minute warning. Finally, the court advised counsel that her time had expired. The court then excused the venire panel from the courtroom so the parties could assert their challenges for cause and exercise their peremptory challenges. At this time, Rogers's counsel objected to the curtailing of voir dire and told the court that additional questions were necessary

for intelligent selection of members of the jury. Specifically, she wanted to ask whether:

- any of the panelists considered himself a skeptic;
- anyone would have to hear from the defendant to find him not guilty;
- anyone would require the defendant to testify to believe that he acted in self defense;
- anyone had been a victim of crime;
- anyone wanted to serve on a jury and why-or why not.

Counsel asserted that each question should be asked of each veniremember.

### Applicable Law

■ The trial court's broad discretionary power to control the conduct of the voir dire examination is well-established. *McCarter v. State*, 837 S.W.2d 117, 120 (Tex.Crim.App.1992). This discretion includes the ability to place reasonable limitations on the voir dire "for various reasons, among them to curb the prolixity of what can be the lengthiest part of a criminal proceeding." *Guerra v. State*, 771 S.W.2d 453, 467 (Tex.Crim.App.1988). We review a court's decision to limit voir dire questioning according to an abuse-of-discretion standard. *McCarter*, 837 S.W.2d at 120. Specifically, in reviewing a contention that the trial court abused its discretion in terminating voir dire during collective questioning of the venire, we must examine: (1) whether counsel attempted to prolong voir dire; and (2) whether the court prohibited proper questions. *De La Rosa v. State*, 414 S.W.2d 668, 671 (Tex. Crim.App.1967). If the court terminates voir dire during questioning of individual panelists, then we also consider whether counsel was precluded from examining jurors who served on the jury. *Ratliff v. State*, 690 S.W.2d 597, 599 (Tex.Crim.App. 1985).

### Application of Law to Facts

■ The first issue is whether counsel attempted to prolong the voir dire. As we recently noted:

To decide whether counsel attempted to prolong the voir dire, we review the record to see if the questions counsel posed were 'irrelevant, immaterial or unnecessarily repetitious.' As a part of this analysis, we examine whether counsel appropriately budgeted the time allotted for voir dire. (Cites omitted.).

*Tamez v. State*, 27 S.W.3d 668, 672 (Tex. App.—Waco 2000, no pet. h.).

■ In this case, it appears that counsel did attempt to prolong the voir dire. Counsel took almost twice as much time as the State did. Some of the questions asked were neither relevant nor material. For example, counsel asked one member of the panel whether she or her husband won when they had an argument. Also, counsel used much of her time in discussing unrelated concepts such as burden of proof in a termination of parental rights case. She discussed her advice to her father about avoiding jury duty. She engaged in a prolonged argument with panel members about whether she was trying to put words into their mouths. At one point, the court warned: "Stay away from philosophy and ask your questions, please." Counsel has a duty to budget her time appropriately for voir dire. *Whitaker v. State*, 653 S.W.2d 781, 781 (Tex.Crim.App. 1983). Had counsel done that, she could have completed her questioning of the panel. Because we find that counsel did prolong voir dire, we do not need to address the other prongs of the abuse-of-discretion standard. *See Tamez v. State*, 27 S.W.3d 668 (Tex.App.—Waco 2000, no pet. h.). Thus, we find that the court did not abuse its discretion by limiting voir dire ques-

tioning. Accordingly, we overrule Rogers's third issue.

## CONCLUSION

Having overruled all issues, we affirm the trial court's judgment.