

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00444-CV

REIDIE JAMES JACKSON, APPELLANT

V.

OLIVER BELL, ET AL., APPELLEES

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 101697-E, Honorable Douglas Woodburn, Presiding

December 7, 2015

OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Reidie Jackson, a prison inmate appearing *pro se* and *in forma pauperis,* sued Oliver Bell in his capacity as chairman of the Texas Board of Criminal Justice and Rick Thaler in his capacity as director of the Texas Department of Criminal Justice-Correctional Institutions Division (the Division).[1] The trial court found Jackson to

---

[1] We judicially notice that the Honorable Dale Wainwright is now chairman of the Texas Board of Criminal Justice and William Stephens is director of the Correctional Institutions Division. Chairman Wainwright and Director Stephens are substituted as appellees in their respective official capacities. TEX. R. APP. P. 7.2(a).

be a vexatious litigant under Chapter 11 of the Civil Practice and Remedies Code[2] and dismissed his lawsuit under Chapter 14 of the Civil Practice and Remedies Code.[3] We will affirm both of the trial court's actions.

## Background

Jackson filed his suit in Travis County on March 14, 2013. He sought declaratory and injunctive relief,[4] and requested certification of a class consisting of all inmates in the Division's custody.[5]

Jackson's petition asserted that, by section 1.08 of the Texas Penal Code,[6] the Legislature preempted the Division's power to make and enforce rules that criminalize and punish conduct proscribed by the Penal Code.[7] Jackson further alleged the Division enacted policies and procedures "to cause Plaintiff deprivation [of] liberty

---

[2] TEX. CIV. PRAC. & REM. CODE ANN. §§ 11.001-.104 (West 2002 & Supp. 2015).

[3] TEX. CIV. PRAC. & REM. CODE ANN. §§ 14.001-.014 (West 2002 & Supp. 2015).

[4] *See* TEX. GOV'T CODE ANN. § 2001.038(b) (West 2008) (action may be brought only in a Travis County district court); *Tex. Dep't of Pub. Safety v. Salazar,* 304 S.W.3d 896, 903 (Tex. App.—Austin 2009, no pet.) (injunctive relief available under the Administrative Procedures Act).

[5] *See* TEX. R. CIV. P. 42.

[6] This section, entitled "Preemption," states, "No governmental subdivision or agency may enact or enforce a law that makes any conduct covered by this code an offense subject to a criminal penalty. This section shall apply only as long as the law governing the conduct proscribed by this code is legally enforceable." TEX. PENAL CODE ANN. § 1.08 (West 2011).

[7] As examples, Jackson alleged the Division has no authority to criminally punish inmates for assault, extortion, riot, escape, terroristic threat, fraud, disorderly conduct, and indecent exposure. Elsewhere he mentioned sexual abuse, possession of a weapon, and sexual misconduct.

2

interest, and property interest, and to be subjected to punishments without due process and/or cruel and unusual punishments which are current and ongoing."[8] While Jackson alleged "there are many cases in which [he] was accused of conduct outlined in Texas Penal Code and subjected [to] criminal penalties," he identified two such incidents through exhibits attached to his petition. In one instance, Jackson struck a corrections officer on the jaw, causing injuries that required first aid. After a prison disciplinary hearing Jackson was found guilty and punished by suspension of his recreation and commissary privileges for specified days, and continuation in "line 3."[9] In a second occurrence, Jackson refused to comply with the order of a corrections officer. After a finding of guilty at a disciplinary hearing, Jackson was punished by loss of recreation and commissary days, and continuation at line class 3.

Jackson's petition sought an unspecified declaration and a permanent injunction prohibiting the Division from regulating inmate conduct that is also made criminal by the Penal Code. Based on an unidentified injury, his prayer requested, in addition to injunctive and declaratory relief, recovery of "general and special damages."

---

[8] Jackson's petition is difficult to follow. On appeal, Jackson asserts the pleading alleged claims of: "biased disciplinary hearing officer; ultra vires procedure; ultra vires subjugation; a separation of powers; denial of open courts and other due process." Be that as it may, we nonetheless conclude the foundation of Jackson's complaint is that the Penal Code preempts the Division's inmate disciplinary procedure.

[9] Line Class 3 is an unfavorable classification with regard to an offender's ability to earn good time credit. *See Ex parte Kelley,* 89 S.W.3d 213, 214 n.1 (Tex. App.—Corpus Christi 2002, no pet.).

3

On appellees' motion, venue of the case was transferred to Potter County, the county of Jackson's imprisonment.[10] Appellees filed a motion to dismiss the case under Chapter 14, and a motion to declare Jackson a vexatious litigant under Chapter 11. The court conducted a hearing and declared Jackson a vexatious litigant subject to a pre-filing order. Appellees thereafter filed an amended motion to dismiss Jackson's case under Chapter 14. A hearing was not held on the motion but the court signed an order dismissing the case under Chapter 14 as frivolous.

Chapter 14

In his second and third issues, Jackson maintains the trial court erred by dismissing his lawsuit under Chapter 14 because the Division's motion challenged only one of several issues raised by his petition.

Under Chapter 14, a trial court may dismiss an inmate's claim if it finds the claim is frivolous or malicious. *Hamilton v. Williams,* 298 S.W.3d 334, 339 (Tex. App.—Fort Worth 2009, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 14.003 (West 2002)). If an inmate's lawsuit is dismissed as frivolous without a hearing, appellate review focuses on whether the suit had an arguable basis in law. *Higgins v. Blount,* No. 07-12-00093-CV, 2013 Tex. App. LEXIS 6168, at *4-5 (Tex. App.—Amarillo May 17, 2013, pet. denied) (mem. op.) (citing *Hamilton,* 319 S.W.3d at 809). Whether a claim lacked an arguable basis in law presents a question of law that we review *de novo. Id.* For our review, we accept as true the allegations of an inmate's petition and review the types of relief and causes of action alleged to determine whether, as a matter of law, the petition

_____

[10] Jackson does not challenge the venue determination. *Compare* TEX. GOV'T CODE ANN. § 2001.038 *with* TEX. CIV. PRAC. & REM. CODE ANN. § 15.019 (West 2002).

4

states a cause of action authorizing relief. *Hamilton,* 298 S.W.3d at 339. A claim relying on an indisputably meritless legal theory has no arguable basis in law. *Id.*

The trial court's dismissal order states in part, "[i]t is hereby ordered that Plaintiff's entire suit is dismissed as frivolous and for failure to comply with Chapter 14 of the Texas Civil Practice and Remedies Code. The court denies all relief not expressly granted in this judgment" (capitalization and highlighting omitted). On a finding that Jackson's suit was frivolous, the trial court was empowered to render an order of dismissal on its own motion. TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(a). In other words, the sufficiency of appellees' motion to dismiss mattered not. The trial court could fully address the matter of dismissal for lack of an arguable basis in law on its own motion. The question then is not the sufficiency of appellees' amended motion to dismiss but whether, as a matter of law, Jackson's petition states a cause of action authorizing relief.

Jackson's complaint concerns Penal Code section 1.08's alleged preemption of the Division's ability to discipline inmates. *See Richardson v. Responsible Dog Owners*, 794 S.W.2d 17, 19 n.2 (Tex. 1990) (applying section 1.08). Looking to the allegations of his petition, we thus consider whether Jackson has been subjected to a criminal penalty for a violation of Division rules addressing conduct that also is addressed by the Penal Code.

Jackson asserted that the first occurrence for which he was disciplined, his action of striking a corrections officer, was an assault proscribed by the Penal Code. *See* TEX. PENAL CODE ANN. § 22.01 (West Supp. 2015) (describing offense of assault). It is less

5

clear that the second incident, in which he was disciplined for his failure to obey an order, involved a Penal Code offense, but for present purposes we will assume in that instance also he was disciplined under Division rules for conduct also proscribed by the Penal Code. In both instances, the penalties Jackson's pleadings describe include the suspension of his recreation and commissary privileges, and his continuation in line class 3. The criminal penalties imposed under the Penal Code include fines, confinement in jail and imprisonment in the Department of Criminal Justice. *See generally* TEX. PENAL CODE ANN. § 12.01 *et seq.* (West 2011 & Supp. 2015). Jackson does not allege he received, or even was subject to, penalties of that nature by virtue of his violation of Division rules. And, while we need not consider whether the penalties set out in the Penal Code constitute the entire universe of "criminal penalties," it is clear to us the penalties Jackson's pleadings describe do not constitute "criminal penalties," as that phrase is used in Section 1.08.

Our conclusion the punishments to which Jackson was subjected under the prison disciplinary rules are not "criminal penalties" is supported by the reasoning of the many cases addressing the question whether double jeopardy bars a criminal prosecution for conduct addressed through a prison inmate disciplinary system. *See* Jeremy J. Overbey, Comment: *The Texas Department of Criminal Justice—Institutional Division: Controlling and Disciplining Society's Inmate Population,* 4 TEX. TECH J. TEX. ADMIN. L. 257, 264 (2003) (observing an overlap in Division rules and Texas criminal statutes "has led many . . . inmates to claim that disciplinary sanctions are actually punishment. . . .").

It is well settled that prison disciplinary proceedings do not constitute criminal prosecutions. . . . Prison disciplinary proceedings and criminal prosecutions have differing goals. The prison disciplinary process determines whether the defendant has violated the conditions of his incarceration and is designed to maintain institutional security and order. In contrast, a criminal prosecution is designed to punish the defendant for a violation of the criminal laws. While prison disciplinary sanctions may have punitive aspects, they are primarily remedial in nature. Punitive interests and remedial interests . . . are nowhere so tightly intertwined as in the prison setting, where the government's remedial interest is to maintain order and to prevent violent altercations among a population of criminals.

*Turner v. Johnson,* 46 F. Supp. 2d 655, 666-67 (S.D. Tex. 1999) (internal quotation marks and bracketing, and citations omitted). "Prison administrators must have the ability to discipline a prisoner for violating institutional regulations, and the State must have the ability to prosecute the prisoner for the same conduct at a later date; combining the two proceedings would not be feasible." *Garrity v. Fiedler,* 41 F.3d 1150, 1153 (7th Cir. 1994) (noting historically courts have deferred questions of prison administration and discipline to the expertise of prison authorities).

The discussion in *Rogers v. State*, a double jeopardy case arising from a conviction following prison discipline, is helpful for understanding whether the Division subjected Jackson to a criminal penalty under the Penal Code. *Rogers v. State,* 44 S.W.3d 244 (Tex. App.—Waco 2001, no pet.). There it was alleged that Rogers violated prison rules and regulations by striking a corrections officer in the face with his fist. He was found guilty at a prison disciplinary hearing and assessed fifteen days solitary confinement, loss of 283 days good conduct time, and loss of other privileges. Later he was indicted, convicted and sentenced by a district court for assault on a public servant. On appeal, Rogers argued that because he received discipline in prison, his

prosecution for the same conduct was barred by double jeopardy. 44 S.W.3d at 245. Citing *Turner* and *Glinski v. State,* 986 S.W.2d 79 (Tex. App.—Houston [1st Dist.] 1999, no pet.), which held prison disciplinary sanctions do not trigger double jeopardy protections, the Waco court overruled Rogers' double jeopardy issues. 44 S.W.3d at 247. *See also Hudson v. United States,* 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997); *Ex parte Hernandez,* 953 S.W.2d 275, 285 (Tex. Crim. App. 1997); *Ex parte Kelley*, 89 S.W.3d at 215-16.

Like the inmate punishments addressed in *Rogers*, 44 S.W.3d at 245, those meted out to Jackson were chiefly remedial, instituted to maintain order and ensure a safe prison environment.[11] *See Turner,* 46 F. Supp. 2d at 666. Moreover, the punishment Jackson received "was not so grossly disproportionate to the remedial goals 'that they could only be viewed as criminal punishment.'" Overbey, 4 TEX. TECH J. TEX. ADMIN. L. at 265 (quoting *Hernandez,* 953 S.W.2d at 285). For the same reasons, we find the punishment was not a "criminal penalty" under section 1.08.

A grant of permanent injunctive relief requires, among other things, a showing of a wrongful act. *Triantaphyllis v. Gamble,* 93 S.W.3d 398, 401 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Although he does not specifically allege it, we think Jackson must mean by his allegations that the Division commits a wrongful act by

---

[11] The stated goals of the inmate disciplinary process are: "maintain order and control of institutional safety; ensure offenders are not disciplined unfairly; ensure constitutional rights are protected; modify offender behavior in a positive manner; and maintain an official record of an offender's disciplinary history." *Disciplinary Rules and Procedures for Offenders,* Texas Department of Criminal Justice-Correctional Institutions Division, at p. i (Feb. 2015 ed.). Available at: www.tdcj.state.tx.us/documents/cid/Disciplinary_Rules_and_Procedures_for_Offenders _English.pdf

operating an inmate disciplinary system that the Legislature has preempted by section 1.08.  Our conclusion the punishments to which Jackson was subjected do not run afoul of section 1.08 requires that we reject a "wrongful act" allegation as well.  And the Legislature expressly has assigned the Division the task of maintaining inmate discipline.  *See* TEX. GOV'T CODE ANN. § 494.002(a) (West 2012) (empowering the director of the Division to establish policies governing the "discipline of inmates").  Accordingly, on its face, Jackson's petition shows he could not establish the required wrongful act, essential to obtaining the permanent injunctive relief he seeks, nor could he establish an entitlement to damages, if indeed his pleadings seek that relief.

We find Jackson's claim lacks an arguable basis in law because it relies on an indisputably meritless legal theory.  The Division's disciplinary rules enforced against Jackson for engaging in conduct also criminalized by the Penal Code did not subject him to a criminal penalty.  The trial court did not err in dismissing Jackson's lawsuit as frivolous.

Chapter 11

In his first issue, Jackson challenges the trial court's implicit finding that there is not a reasonable probability he will prevail in the litigation.

We apply the abuse of discretion standard when reviewing a trial court's determinations under Chapter 11.  *Devoll v. State,* 155 S.W.3d 498, 502 (Tex. App.—San Antonio 2004, no pet.).  The test for an abuse of discretion is whether the court acted arbitrarily or unreasonably and without reference to any guiding rules and

9

principles.  *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985).

Under Civil Practice and Remedies Code section 11.051, a defendant may, on or before the 90th day after the date the defendant files its original answer, move the court for an order determining that the plaintiff is a vexatious litigant and requiring the plaintiff to furnish security.  TEX. CIV. PRAC. & REM. CODE ANN. § 11.051 (West 2002).  Vexatious litigants are persons who abuse the legal system by filing numerous, frivolous lawsuits. *Drake v. Andrews,* 294 S.W.3d 370, 373 (Tex. App.—Dallas 2009, pet. denied).  A vexatious litigant determination requires the defendant to demonstrate that there is not a reasonable probability the plaintiff will prevail in the litigation against the defendant and that the plaintiff, in the preceding seven-year period, commenced, prosecuted, or maintained as a *pro se* litigant at least five litigations, other than in small claims court, that were finally determined adversely to the plaintiff.  TEX. CIV. PRAC. & REM. CODE ANN. § 11.054 (West Supp. 2015). Jackson's appellate issue addresses only the first requirement.  Based on our analysis of Jackson's second and third issues, and finding that his petition alleged an indisputably meritless legal theory, we further find the trial court rightly could have determined there was not a reasonable probability Jackson would prevail in the litigation.  Accordingly, Jackson's first issue is overruled.

*Motion to Admit New Evidence*

During the pendency of this appeal Jackson filed a document entitled "motion to admit new evidence."  By notice to the parties, we carried it with the appeal to disposition.  The motion is denied.

10

Conclusion

Having overruled Jackson's three issues on appeal, we affirm the order designating Jackson a vexatious litigant and establishing a pre-filing order requirement, and the final judgment dismissing Jackson's suit.


James T. Campbell
Justice