**Opinion issued August 8, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-01023-CR

————————————

**JEFF CLAY EVERITT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1406723**

---

## MEMORANDUM OPINION

A jury found appellant, Jeff Clay Everitt, guilty of the offense of aggravated

sexual assault of a child under fourteen years of age.[1]  The trial court assessed his

---

[1]     *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii), (a)(2)(B) (Vernon Supp. 2016).

punishment at confinement for fifteen years. In three issues, appellant contends that the trial court erred in restricting his voir dire examination, denying his motion for access to juror information, and denying a hearing on his motion for new trial.

We affirm.

## Background

The complainant testified that when she was seven years old, she moved in with her grandmother and appellant, her step-grandfather. "[M]ore than one time," appellant came into her bedroom at night and made her "suck on his potty thing." And "[m]ore than one time," during "story time," he "put his hands through [her] pajamas and touch[ed] [her] private part." Although she told her grandmother about the assaults, her grandmother "thought [she] was dreaming." After she later told a school classmate, the classmate's mother contacted the school principal.

Sandra Lozano, the principal and director of My Private School, where the complainant was a student, testified that the complainant told her that at night, her grandfather would come into her bedroom, pull his pants down or off, pull out his "thingy" that he "uses to go pee-pee," and "put[] it in her mouth." The complainant also told her that "sometimes [appellant] pull[ed] her pants down and [her] underwear and look[ed] at her bottom." Lozano noted that the complainant had moved in with her grandmother and appellant in June 2012, was a very good student, and had not demonstrated any behavioral issues.

2

Dr. Michelle Lyn testified that in 2013, she was the medical director of the Harris County Children's Assessment Center ("CAC") and interviewed the complainant. The complainant told her that her grandfather had sexually abused her and explained in detail the abuse. Lyn explained that although the complainant's medical exam revealed no signs of physical injury, "it would be rare to have physical evidence of trauma with the type of contact disclosed."

Dr. Carmen Petzold, a psychologist testifying as an expert for the defense, explained potential causes of false outcries, including suggestive interviewing. Based on her review of the records, she opined that certain "conditions," "favorable for the creation of a false outcry," were present in this case. Specifically, the complainant, being in a new home and school, may have said "something that [was] untrue in order to gain sympathy" or to "get into a different situation." Petzold also noted that the complainant had been interviewed informally a number of times and, when Lozano initially interviewed her, she denied that any abuse had occurred. However, when Lozano again talked with her, the complainant discussed the abuse. Petzold further opined that Lozano, by interviewing the complainant a second time, had "communicate[d] . . . very clearly" to the complainant that her "first answer was wrong." Petzold opined that the complainant's eventual outcry was a product of "making up things in order to please an authority figure."

Anna Everitt, the complainant's grandmother, testified that the complainant never told her about any abuse. She noted that there were as many as eight people living or staying at her house at the time of the alleged abuse and the complainant's bedroom was next to hers. She further explained that the complainant had a propensity to lie.

Appellant testified that none of the alleged contact had occurred. He noted that his house is small, the complainant slept with her door open, and his mother-in-law slept nearby. He explained that the complainant had gotten into a lot of trouble at home and school, particularly for lying, and she had previously made allegations of "sexual behavior" against her brother.

On rebuttal, Christina Fiori, the complainant's teacher during the 2012-2013 school year, testified that the complainant "was a chatterbox sometimes, but that was it." She "never had a problem" with the complainant lying.

**Limitations on Voir Dire**

In his first issue, appellant argues that the trial court erred in imposing a strict thirty-minute time limitation on his voir dire examination because it prohibited him from asking additional questions of the venire members, collectively and individually. He asserts that he was unable to intelligently exercise his peremptory challenges.

"Jury selection and the laws governing it are designed to ensure that juries in criminal cases are fair to both sides; of paramount concern is the defendant's right to exercise peremptory challenges intelligently." *Wappler v. State*, 183 S.W.3d 765, 772 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). The purpose of voir dire is to (1) elicit information that would reveal any basis for a challenge for cause, such as a bias for or against a party; (2) facilitate the intelligent use of peremptory challenges, which may be exercised without a stated reason; and (3) educate the venire on the party's theory of the case and establish rapport with the prospective jury members. *Sanchez v. State*, 165 S.W.3d 707, 710–11 (Tex. Crim. App. 2005); *Wappler*, 183 S.W.3d at 772.

A trial court has the authority to impose reasonable restrictions on the exercise of voir dire examination for various reasons, including placing reasonable limits on the amount of time each party can question the venire, in order to "curb the prolixity of what can become the lengthiest part of a criminal proceeding." *Guerra v. State*, 771 S.W.2d 453, 467 (Tex. Crim. App. 1988). There is not a "bright-line rule" for determining whether a time limit for voir dire is too restrictive, and the amount of time allotted is not, on its own, determinative. *See Wappler*, 183 S.W.3d at 773. Each case must be examined on its own facts. *Ratliff v. State*, 690 S.W.2d 597, 600 (Tex. Crim. App. 1985) ("A reasonable time limitation in one case may not be reasonable for another."); *Wappler*, 183 S.W.3d at 773; *compare Barrett v. State*,

516 S.W.2d 181, 182 (Tex. Crim. App. 1974) (upholding thirty-minute time restriction on voir dire in trial for aggravated assault), *and Phillips v. State*, No. 01-90-00757-CV, 1991 WL 148719, at *3 (Tex. App.—Houston [1st Dist.] Aug. 8, 1991, pet. ref'd) (upholding thirty-minute time restriction on voir dire in trial for indecency with child), *with Tamez v. State*, 27 S.W.3d 668, 673 (Tex. App.—Waco 2000, pet. ref'd) (discussing cases in which time allotted for voir dire deemed unreasonably restrictive).

We review a trial court's restrictions on voir dire for an abuse of discretion. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). When a defendant complains that he was restricted from questioning the venire collectively, we determine whether (1) he attempted to prolong voir dire and (2) the questions he was not permitted to ask were proper voir dire questions. *McCarter v. State*, 837 S.W.2d 117, 119 (Tex. Crim. App. 1992).

In determining whether counsel attempted to prolong voir dire, we review the record to see if counsel posed "irrelevant, immaterial or unnecessarily repetitious" questions. *Ratliff*, 690 S.W.2d at 599. As part of this analysis, we examine whether counsel appropriately budgeted the time allotted for voir dire. *See Whitaker v. State*, 653 S.W.2d 781, 781 (Tex. Crim. App. 1983); *Tamez*, 27 S.W.3d at 672; *Thacker v. State*, 889 S.W.2d 380, 391 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).

In regard to the second factor, a question is proper if its purpose is to discover a juror's views on an issue applicable to the case. *McCarter*, 837 S.W.2d at 121. "Questions that are not intended to discover bias against the law or prejudice for or against the defendant, but rather seek only to determine how jurors would respond to the anticipated evidence and commit them to a specific verdict based on that evidence, are not proper." *Sanchez*, 165 S.W.3d at 712. Further, a voir dire question that is so vague or broad in nature as to constitute a global fishing expedition is not proper and may be prohibited. *Barajas*, 93 S.W.3d at 39.

If the record reveals either that counsel attempted to prolong voir dire or the questions that he was not permitted to ask did not constitute proper voir dire questions, we will conclude that the trial court did not err in restricting voir dire. *Ganther v. State*, 848 S.W.2d 881, 882–83 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd); *see, e.g.*, *Profitte v. State*, No. 01-96-00859-CR, 1998 WL 418097, at *2 (Tex. App.—Houston [1st Dist.] July 23, 1998, pet. ref'd) (not designated for publication) (declining to reach second factor where first factor met).

Further, when an appellant complains that a trial court restricted his ability to question venire members *individually*, he must, in addition to the two factors above, show that the prospective juror whom he was prevented from examining actually served on the jury. *McCarter*, 837 S.W.2d at 119.

7

Here, prior to the commencement of voir dire, the trial court instructed appellant and the State that each would be allotted thirty minutes to question the venire members. The trial court then, for approximately one hour, conducted a preliminary voir dire of the 65 venire members. The judge introduced herself and the attorneys, asked whether any members of the venire knew her or the attorneys, and asked whether any members had previously served on a grand jury or on a jury in a criminal trial. The trial court then read the indictment, noted the elements of the offense, and discussed various types of witnesses, asking whether any venire member would grant a witness "automatic believability or credibility" simply because the witness wore a uniform or had special credentials. The trial court further discussed the "one witness rule,"[2] illustrated it with a hypothetical, and asked whether any venire member would be unable to follow the law. Venire member 31 stated that he could not and was later excused.

The trial court also discussed at length the State's burden of proof in a criminal case, compared it to the burdens in civil and parental-rights-termination cases, and presented hypotheticals to illustrate the distinctions. It discussed the presumption of innocence, explained a defendant's right not to testify, and discussed reasons why a defendant might not testify.

---

[2] *See Lee v. State*, 206 S.W.3d 620, 623 (Tex. Crim. App. 2006).

The trial court then asked whether any of the venire members, or any of their family members or close friends, had ever been sexually assaulted or abused. After venire member numbers 1, 9, 12, 13, 17, 18, 19, 23, 41, 53, and 54 each answered in the affirmative, the trial court asked whether each could "put aside" his or her experience and "decide this case just based on this case." Each of them answered, "Yes," except for venire member number 54, who was later excused.

The trial court also asked whether any venire member had ever been falsely accused of sexual assault. Number 28 stated that "years ago," he had been so accused. Number 34 stated that someone close to him had been accused. The trial court asked whether each could set aside his experience and decide this case based on the evidence presented, and each answered in the affirmative.

The State, during its voir dire, discussed its burden of proof, explained that a defendant need not present evidence, and asked whether any venire member would require it to prove its case "beyond all doubt." The State also discussed the types of evidence one might expect in a child-sexual-assault case, the admissibility of videotaped statements and offense reports, and the likelihood of finding evidence of injuries or DNA. It explained the effects of a delayed outcry on the ability to gather evidence and the "one witness rule." And it asked venire members by row about their ability to convict based on the testimony of a single witness. The State also inquired as to whether venire members would wait until they heard all of the

9

evidence before drawing any conclusions. It asked which venire members worked with children, for venire members' thoughts on children and lying, and why children might have trouble with timelines. The State asked whether any venire member would hold a child to a higher standard than an adult in regard to recalling the details of a sexual assault. And it then asked each venire member a scaled question regarding the likelihood that a child might be influenced to make false allegations of sexual assault.

Appellant's trial counsel began his voir dire with a lengthy hypothetical and asked the venire, "Has anyone here ever had something really bad said about you [that] other people just assumed it to be true?" He discussed with venire member number one how it "ma[d]e her feel that somebody had believed something . . . bad about [her]." Counsel asked if anyone had "ever been a victim of gossip" and for venire members to raise their hands if they agreed that "being sexually abused" or "being sexually assaulted as a child would be just a horrible, unspeakable thing?" Counsel then asked the venire members to "think of one word to describe" what it "must . . . be like to be accused of something like [sexual assault] if you didn't do it," and he individually questioned the first thirty venire members.

Appellant's trial counsel then discussed the State's burden of proof, asking the venire, collectively, "Do we need more than one reasonable doubt in a case for the Government not to have met its burden? How many people say, yeah? How

many people say one . . . ?  How many people are not sure?"  He then asked the venire, collectively, various iterations of: "If you have a reasonable doubt as to whether this happened, they're saying these terrible things that [appellant] did to somebody, if you have a reasonable doubt on that, what would your verdict be?"  After speaking with individual venire members, counsel asked the venire, collectively, "If you have even one reasonable doubt as to any elements of the offense at the end of the case, raise your hand if the verdict is not guilty.  If you have one reasonable doubt at the end of the trial after the evidence is over, stand up if your verdict is not guilty . . . ."  He then questioned individual venire members 17, 35, and 38, who did not stand up, about whether, if they had "a reasonable doubt as to some elements of the offense," they could "envision a scenario" in which they "would still find [appellant] guilty."

Appellant's trial counsel then, as the trial court had previously done, compared the reasonable-doubt standard to the standards of reasonable suspicion, probable cause, preponderance of the evidence, and clear and convincing proof.  He presented a lengthy discussion, comparing the standards to "five cabins in the woods."  And counsel asked individual venire members to explain why a criminal case "require[s] more evidence for a conviction that the Government has to [present] in a family law case where they're claiming abuse or neglect."

11

Appellant's trial counsel then asked the venire, collectively, whether "young kids know more about sex today than they used to," and he individually questioned several venire members about potential sources of such information. After the trial court announced a one-minute warning, counsel began asking venire members why a child might make a false accusation of sexual abuse against an adult.

After the trial court announced that appellant's time for voir dire had expired, appellant's counsel requested additional time and presented a bill of exceptions, as follows:

| [Appellant's Counsel]: | The Defense is requesting more time for voir dire. I have a number of questions that I haven't been able to cover with the venire panel. I'm prepared to list them all. There are— |
|---|---|
| THE COURT: | I'm not going to give you any more time to list them because—let the record reflect that I made it real clear that both sides had 30 minutes. You're not going to go through these with the jury. |
| [Appellant's Counsel]: | All right. So, I do understand I'm not going to get more time— |
| THE COURT: | You can articulate what you want. |
| [Appellant's Counsel]: | Okay. Your Honor, I wanted to ask Jurors No. 1, 9, 12, 13, 17, 19, 23, 31, 41, 53 and 54 questions about their experiences of having been sexually abused or sexual abuse, because even though some may have indicated that they could put it aside, in order for me to intelligently exercise strikes, either peremptory strikes or strikes for cause, I have |

|                      | to know exactly the basis for some of these experiences and how— |
|----------------------|------------------------------------------------------------------|
| THE COURT:           | What do you mean, "basis"? |
| [Appellant's Counsel]: | I want to know if there's any similarity between the venire members' experiences and the fact pattern— |
| THE COURT:           | Are you expecting to ask these people the details [of] the sexual abuse? |
| [Appellant's Counsel]: | To some extent, yes. But in addition to that, separately, your Honor, I also want to probe into how they might view evidence in a criminal case where a person is accused of a sex crime. I just don't think it's sufficient for me to be able to know who they are and then just to try—strike them or not— |
| THE COURT:           | I'm not going to do that. . . . That's denied. |

Appellant's trial counsel also asked the trial court for additional time to ask the venire members, collectively and individually:

- About the types of evidence they would expect to see in an alleged case of child sexual assault;

- Whether they would view some forms of evidence as being more persuasive than another;

- How venire members might be affected by emotional or disturbing testimony.

- Whether venire members would be more inclined to believe a child witness over an adult witness or to believe a police officer or medical professional over another witness;

- The reasons why an accused might choose not to testify;

- Whether any venire member, or a family member or close friend, had ever been employed in law enforcement or with the district attorney's office;

- Whether any venire member, or a family member or close friend, had ever participated in the investigation of a criminal case, been a witness in a criminal case, or was involved with CrimeStoppers.

Further, appellant's trial counsel submitted to the trial court a list of additional questions that he had intended to ask the venire, such as what were their favorite television shows; whom did they most and least admire; what were their religious affiliations; whether they knew anyone with post-traumatic stress disorder, bipolar disorder, or addiction problems; whether they had had any "experience, training, or education" in any one or more of fourteen subject areas, including pornography, human sexuality, bipolar disorder, and the internet; and whether any venire member, or a family member or close friend, had ever been treated for a mental illness. He also submitted a list of 23 true-or-false questions, most of which related to false allegations by children, suggestive questioning of children, and the dynamics of memory and recall. His questions included certain specialized topics, such as whether research has demonstrated certain concepts, whether "confirmatory bias" has been associated with inaccurate statements, and whether "overly sexualized behavior in children is linked to bipolar disorder." The trial court denied counsel's request for more time to ask his additional questions, noting that counsel "could have asked all [of his] questions . . . [and] didn't."

Appellant's trial counsel then requested additional peremptory strikes in order to challenge those venire members who had answered that they had previously been

14

sexually assaulted or abused.[3] The trial court denied his request, noting that it had specifically asked each of those venire members whether they could put aside their personal experiences and consider the evidence in this case, and each had responded in the affirmative, with the exception of venire member 54, who had been excused. Appellant's counsel then asked the trial court for additional peremptory strikes to "cover all of the other scenarios" he presented in his bill of exceptions. The trial court again denied his request.

On appeal, appellant complains that the trial court erred in limiting him both in addressing general questions to the entire venire and asking specific questions of individual venire members. *See McCarter*, 837 S.W.2d at 119; *Ratliff*, 690 S.W.2d at 600.

It is undisputed that the trial court announced in advance of trial that each side should confine its voir dire to thirty minutes. And appellant does not direct us to any place in the record in which he objected to the limitation when it was imposed.

The State argues that appellant's trial counsel "prolonged voir dire" because "an analysis of the transcript shows that [he] spent approximately 65% of his time discussing the standard of proof to be applied in appellant's case." *See McCarter*,

---

[3] On appeal, appellant specifically complains that the trial court denied him an opportunity to question venire member 28, who later served on the jury. The record shows, however, that venire member 28 did not answer that he had been sexually abused. Rather, he answered that he had been falsely accused of having committed sexual assault.

15

837 S.W.2d at 119. The record reveals that appellant's trial counsel focused the majority of his time on the State's burden of proof, an issue that had already been the subject of lengthy discussion, comparisons, and hypotheticals by the trial court and the State. *See Barrett*, 516 S.W.2d at 182 (intent to prolong voir dire shown where counsel spent seventy percent of his time on general principles of law). We recognize that defense counsel "may not be precluded from the traditional voir-dire examination simply because the questions asked are repetitious of those asked by the trial court and the prosecutor." *See McCarter*, 837 S.W.2d at 121. However, appellant's trial counsel did not simply ask repetitive questions. Rather, he focused his discussion on again educating the venire on the burden of proof, including a lengthy comparison of the reasonable-doubt standard to the burdens in civil cases, just as the trial court had already done. *See Glanton v. State*, No. 05-00-01844-CR, 2002 WL 1308804, at *7 (Tex. App.—Dallas June 17, 2002, pet. ref'd) (not designated for publication) (purpose of trial court's presentation and preliminary questions to allow more time for counsel to delve into other areas). Counsel further discussed the burdens of proof by analogizing each to "cabins in the woods." *See Arredondo v. State*, No. 08-08-0026-CR, 2010 WL 337678, at *3 (Tex. App.—El Paso June 29, 2010, pet. ref'd) (not designated for publication) (concluding intent to prolong voir dire shown where counsel engaged in lengthy discussion of standards of proof in civil cases and hypotheticals, at expense of other areas).

16

Here, the record supports the trial court's conclusions that appellant's trial counsel used the majority of the time that he was allotted for voir dire to expound on general principles of law and that the time that he spent in this area was unduly lengthy. *See Barrett*, 516 S.W.2d at 182 (trial court did not err in limiting voir dire to thirty minutes where counsel spent seventy percent of his time on general principles of law); *Sullivan v. State*, 678 S.W.2d 162, 166-67 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) (time spent by defense counsel expounding on general principles of law considered in determining reasonableness of time restriction on voir dire).

Further, the record reveals that appellant's trial counsel focused the remainder of his limited time on asking venire members to name sources from which children might be exposed to information of a sexual nature and individually asking each of thirty venire members to state a word describing how it would feel to be falsely accused of sexual assault. Such questions are not material to revealing bias on the part of venire members. *See Ratliff*, 690 S.W.2d at 599 ("irrelevant, immaterial or unnecessarily repetitious" questions demonstrate intent to prolong voir dire); *see also Sanchez*, 165 S.W.3d at 710–11 (purpose of voir dire).

Trial counsel have a responsibility to appropriately budget time for voir dire within the reasonable limits set by trial courts. *Barrett*, 516 S.W.2d at 182; *Profitte*, 1998 WL 418097, at *2 (citing *Whitaker*, 653 S.W.2d at 781). In *Stephenson v.*

17

*State*, this Court held that the defendant's trial counsel, by "failing to make an effort to work within the time restrictions imposed by the [trial] court, did attempt to prolong voir dire." No. 01-96-01114-CR, 1997 WL 751109, at *4 (Tex. App.—Houston [1st Dist.] Dec. 4, 1997, pet. ref'd) (not designated for publication). There, the defendant devoted one-third of his thirty-five-minute allotment for voir dire to general statements of the law, personal observations, and "a rather long analogy." *Id.* at 3. His remaining time, in large part, was comprised of unfocused discussion with several venire members about the definition of a "technicality" and its effect on the State's burden of proof. *Id.* We concluded that counsel was well aware of the time restrictions before voir dire began and, nevertheless, spent a large percentage of his time expounding on general principles of law, engaging in unfocused exchanges with prospective jurors, and asking few direct questions. *Id.* at *4. Thus, we held that the trial court did not err in limiting voir dire. *Id.*

We hold that the trial court could have reasonably concluded that appellant's trial counsel did not appropriately budget the time that he was allotted for voir dire and could have asked his omitted questions, had he focused on his time. *See Ratliff*, 690 S.W.2d at 599; *Sterling v. State*, No. 01-99-00377-CR, 2000 WL 705060, at *1–2 (Tex. App.—Houston [1st Dist.] June 1, 2000, no pet.) (not designated for publication) (trial court did not err in limiting voir dire where "counsel could have easily asked any of her omitted questions during the time she spent [on unfocused

18

questions]"); *see also Arredondo v. State*, No. 08-08-00226-CR, 2010 WL 337678, at *3 (Tex. App.—El Paso Jan. 29, 2010, pet. ref'd) (not designated for publication) ("By engaging in lengthy discussions of some issues at the expense of others, counsel did not appropriately budget his time."); *Glanton*, 2002 WL 1308804, at *4 (trial court did not err in limiting voir dire where disallowed questions constituted basic inquiries most lawyers would have addressed in first minutes of voir dire); *Rogers*, 44 S.W.3d 244, 248 (Tex. App.—Waco 2001, no pet.) (trial court did not err in limiting voir dire where counsel could have completed voir dire had she not engaged in irrelevant and immaterial discussion).

Having held that the trial court could have reasonably concluded that appellant's trial counsel did not appropriately budget the time that he was allotted for voir dire, we do not reach the issue of whether his omitted questions were appropriate for voir dire. *See McCarter*, 837 S.W.2d at 119; *see also Profitte*, 1998 WL 418097, at *2; *Stephenson*, 1997 WL 751109, at *4.

Accordingly, we further hold that the trial court did not err in limiting appellant's voir dire.

We overrule appellant's first issue.

### New Trial

In his third issue, appellant argues that the trial court erred in overruling his motion for new trial without first holding a hearing because the motion raised issues

19

that are not determinable from the record. The State argues that appellant waived any error from the trial court's overruling of his motion without a hearing because he did not obtain a ruling or object to the trial court not conducting a hearing.

As a prerequisite for appellate review, the record must show that appellant (1) presented a timely, specific complaint, i.e., request, objection, or motion, to the trial court and (2) obtained a ruling on the request, objection, or motion, or a refusal to rule coupled with an objection to such refusal. *See* TEX. R. APP. P. 33.1. To be entitled to a hearing on a motion for new trial, a defendant must present his timely filed motion for new trial and a request for a hearing to the trial court. TEX. R. APP. P. 21.6; *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005) ("Presenting the motion for new trial and the request for a hearing is akin to objecting to the erroneous admission of evidence."); *Bearnth v. State*, 361 S.W.3d 135, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). "A reviewing court does not reach the question of whether a trial court abused its discretion in failing to hold a hearing if (1) no request for a hearing is presented to it; and (2) no ruling on the request or motion is obtained." *Hemphill v. State*, No. 14-13-00395-CR, 2015 WL 1456338, at *6 (Tex. App.—Houston [14th Dist.] Mar. 26, 2015, no pet.) (mem. op., not designated for publication).

Appellant's motion for new trial contains a "Certificate of Presentment," which states, "On this day, December 2, 2015, counsel for [appellant] presented his

20

motion for new trial to the trial court," and it bears the trial court's signature. *See Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998). The State concedes that appellant presented his motion and request for a hearing to the trial court. *See* TEX. R. APP. P. 21.6 (presentment), 33.1(a)(1). The State asserts, however, that appellant did not preserve his complaint that the trial court denied his request for a hearing because he did not obtain a ruling on his request for a hearing. *See* TEX. R. APP. P. 33.1(a)(2) (appellant must obtain ruling on request, objection, or motion, or object to trial court's refusal to rule).

The "responsibility for obtaining and setting a hearing falls on the party seeking it," and not the trial court. *See Ryan v. State*, 937 S.W.2d 93, 97 (Tex. App.—Beaumont 1996, pet. ref'd) (defendant who requests hearing on motion for new trial must secure hearing; trial court has no independent responsibility to set hearing). When, as here, a motion for new trial is overruled by operation of law, the fact that the trial court did not conduct a hearing, without more, simply constitutes a "failure to rule" on the request for a hearing. *Oestrick v. State*, 939 S.W.2d 232, 235 (Tex. App.—Austin 1997, pet. ref'd); *see, e.g.*, *Castro v. State*, No. 03-12-00730-CR, 2015 WL 1214402, at *5 (Tex. App.—Austin Mar. 13, 2015, pet. ref'd) (mem. op., not designated for publication) (error not preserved where record did not show defendant objected to trial court not holding hearing on new-trial motion); *Ocon v. State*, No. 11-06-00036-CR, 2009 WL 2213472, at *2 (Tex. App.—Eastland July

21

23, 2009, pet. ref'd) (mem. op., not designated for publication) (no showing trial court denied defendant hearing and new-trial motion overruled by operation of law) (citing TEX. R. APP. P. 33.1(a)(2)); *cf. Bermudez v. State*, 471 S.W.3d 572, 575 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (signed order denying motion for new trial also constituted ruling on request for hearing).

In *Perez v. State*, the court of appeals held that the defendant, having failed to obtain a ruling on his request for a hearing or a written order overruling his motion for new trial, and having failed to object to the lack of a ruling, had not preserved his complaint that the trial court erred in denying his request for a hearing on his motion for new trial. No. 10-11-00253-CR, 2013 WL 3770953, at *5 (Tex. App.—Waco July 18, 2013) (mem. op., not designated for publication), *aff'd*, 429 S.W.3d 639 (Tex. Crim. App. 2014). There was no indication in the record that the trial court had refused to conduct a hearing on the defendant's motion for new trial, and his motion for new trial was overruled by operation of law. *Id.* Because the record did not show that the trial court had either explicitly or implicitly ruled on the defendant's request for a hearing on his motion for new trial, the issue was not preserved. *Id.* (citing TEX. R. APP. P. 33.1(a)(2)).

Here, the record contains no indication that the trial court refused to conduct a hearing on appellant's motion for new trial. *See id.*; *Oestrick*, 939 S.W.2d at 235. The trial court's signature on appellant's "Certification of Presentment" neither

grants nor denies his request for a hearing, but simply establishes presentment of the motion. *See* TEX. R. APP. P. 21.6, 33.1(a)(1); *Carranza*, 960 S.W.2d at 79. And his motion for new trial was overruled by operation of law. *See Oestrick*, 939 S.W.2d at 235. Once a defendant presents a motion for new trial to the trial court, the burden rests upon the defendant, as the party presenting the motion, to ensure that a hearing on the motion is set. *Crowell v. State*, 949 S.W.2d 37, 38 (Tex. App.—San Antonio 1997, no pet.). Because the record does not show that the trial court either explicitly or implicitly ruled on appellant's request for a hearing on his motion for new trial, the issue is not preserved. *See* TEX. R. APP. P. 33.1(a)(2).

We hold that appellant has waived his third issue.

### Juror Cards

In his second issue, appellant argues that the trial court erred in denying his motion to access the juror information cards because he demonstrated the requisite good cause. *See* TEX. CODE CRIM. PROC. ANN. art. 35.29 (Vernon Supp. 2016). In his motion, appellant asserted that he "need[ed] to interview venire members" "in anticipation of a hearing" on his motion for new trial to develop a record of how they would have answered the questions that he had intended to ask during voir dire, had the trial court granted him additional time. *See id*. Having held above that appellant

23

waived his complaint that the trial court erred in denying a hearing on his motion for new trial, we need not reach whether the trial court erred in denying him access to juror information cards in order to interview venire members "in anticipation of a hearing" on his motion for new trial. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).